# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| SAMSONITE COMPANY STORES, LLC, | ) | |
| | ) | Case No. 09-13162 (___) |
| | ) | |
| Debtor.[1] | ) | |

## DEBTOR'S PLAN OF REORGANIZATION UNDER
## CHAPTER 11 OF THE BANKRUPTCY CODE

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
Jeffrey D. Saferstein (JS/5339)
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

YOUNG CONAWAY STARGATT &
TAYLOR LLP
Pauline K. Morgan (No. 3650)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Proposed Counsel for the Debtor and Debtor
in Possession

Dated: September 2, 2009

---

[1]     The last four digits of the Debtor's tax identification number are (6266) and its headquarters is located
at 575 West Street, Suite 110, Mansfield, MA 02048.

# TABLE OF CONTENTS

ARTICLE I DEFINITIONS ........................................................................................ 1
    1.1    Defined Terms ................................................................................... 1
    1.2    Other Terms .................................................................................... 10

ARTICLE II TREATMENT OF ADMINISTRATIVE EXPENSES AND
           PRIORITY TAX CLAIMS ................................................................ 11
    2.1    Administrative Expenses ................................................................ 11
    2.2    Priority Tax Claims ........................................................................ 11
    2.3    Fee Claims ...................................................................................... 11

ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS AND
           EQUITY INTERESTS ...................................................................... 12
    3.1    Classification .................................................................................. 12
    3.2    Treatment of Allowed Claims ........................................................ 12
    3.3    Treatment of Equity Interests. ...................................................... 14

ARTICLE IV VOTING ON THE PLAN .................................................................. 14
    4.1    No Classes are Entitled to Vote on the Plan ................................. 14

ARTICLE V IMPLEMENTATION OF THE PLAN ................................................ 14
    5.1    Intercompany Claims ...................................................................... 14
    5.2    Corporate Governance and Management of the Reorganized
           Debtor ............................................................................................. 14
    5.3    Powers of Officers .......................................................................... 15
    5.4    Plan Funding ................................................................................... 15

ARTICLE VI EFFECT OF CONFIRMATION OF THE PLAN ................................ 16
    6.1    Continued Corporate Existence ..................................................... 16
    6.2    Dissolution of Creditors' Committee ............................................. 16
    6.3    Vesting of Property ......................................................................... 17

ARTICLE VII DISTRIBUTIONS ........................................................................... 17
    7.1    Distributions Generally .................................................................. 17
    7.2    Manner of Payment under the Plan ............................................... 17
    7.3    Surrender of Collateral, Surrender and Cancellation of
           Instruments .................................................................................... 17
    7.4    Setoffs ............................................................................................. 18
    7.5    Undeliverable or Returned Distributions ...................................... 18
    7.6    Interest and Penalties on Claims ................................................... 19

ARTICLE VIII PROVISIONS FOR TREATMENT OF DISPUTED
      ADMINISTRATIVE EXPENSES AND DISPUTED CLAIMS ........... 19

8.1    Reserve for Disputed Administrative Expenses and Disputed
       Claims and Bonding Requirements ......................................................... 19
8.2    Disposition of Distribution Reserve ....................................................... 20
8.3    Resolution of Disputed Claims ............................................................... 20

ARTICLE IX EXECUTORY CONTRACTS AND UNEXPIRED LEASES ................ 20

9.1    Assumption of Executory Contracts and Unexpired Leases .................. 20
9.2    Rejection of Executory Contracts and Unexpired Leases ...................... 22
9.3    Rejection Damages Bar Date for Rejections Pursuant to Plan............... 23
9.4    Compensation and Benefit Programs ..................................................... 23

ARTICLE X RELEASES AND INJUNCTION ........................................................ 24

10.1    Discharge of the Debtor ......................................................................... 24
10.2    Injunction ............................................................................................... 25
10.3    Preservation of Causes of Action .......................................................... 25
10.4    Administrative Claims Incurred After the Confirmation Date .............. 26
10.5    Mutual Releases ..................................................................................... 26
10.6    Exculpation ............................................................................................ 27
10.7    Term of Bankruptcy Injunction or Stays .............................................. 29
10.8    Preservation of Insurance ...................................................................... 29
10.9    Officers' and Directors' Indemnification Rights and Insurance ............ 30
10.10    Debtor's Release .................................................................................... 30

ARTICLE XI CONDITIONS PRECEDENT TO CONFIRMATION AND
      EFFECTIVENESS OF THE PLAN ........................................................ 31

11.1    Conditions Precedent to the Effective Date ........................................... 31
11.2    Waiver of Condition .............................................................................. 31

ARTICLE XII RETENTION OF JURISDICTION ...................................................... 32

12.1    Retention of Jurisdiction ........................................................................ 32

ARTICLE XIII MISCELLANEOUS PROVISIONS ................................................... 34

13.1    Payment of Statutory Fees ..................................................................... 34
13.2    Bar Date for Professional Fee and Expense Claims .............................. 34
13.3    Modification of the Plan ........................................................................ 34
13.4    Revocation of Plan ................................................................................ 35
13.5    Headings ................................................................................................ 35
13.6    Binding Effect ....................................................................................... 35
13.7    Notices ................................................................................................... 35
13.8    Governing Law ...................................................................................... 35
13.9    Filing of Additional Documents ............................................................ 36
13.10    Further Proceedings ............................................................................... 36
13.11    Withholding and Reporting Requirements ............................................. 36

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:                    )

                              )   Chapter 11

SAMSONITE COMPANY STORES, LLC,   )

                              )   Case No. 09-_____(___)

                              )

               Debtor.       )

## DEBTOR'S PLAN OF REORGANIZATION UNDER
## CHAPTER 11 OF THE BANKRUPTCY CODE

Samsonite Company Stores, LLC, as debtor and debtor-in-possession, proposes the following plan pursuant to section 1121(a) of the Bankruptcy Code.

## ARTICLE I
## DEFINITIONS

1.1    Defined Terms.  As used herein, the following terms shall have the meanings specified below (such meanings to be equally applicable to both the singular and plural and masculine and feminine forms of the terms defined).

"*Administrative Expense*" means (a) any cost or expense of administration allowed under section 503(b) of the Bankruptcy Code, including, without limitation, (i) Claims arising after the Petition Date and on or before the Effective Date for actual and necessary expenses of preserving the estate of the Debtor (including, without limitation, Claims for Taxes) and (ii) all compensation and reimbursement of expenses to the extent allowed by the Bankruptcy Court under sections 330 or 503 of the Bankruptcy Code and (b) any fees and charges assessed against the estate of the Debtor under chapter 123 of Title 28, United States Code, 28 U.S.C. §§ 1911-1930.

"*Affiliate*" means any Person that directly or indirectly, through one or more intermediaries, controls or is controlled by or is under common control with the Person specified. For purposes of this definition, control of a Person means the power, direct or indirect, to direct or cause the direction or the management and policies of such Person, whether by contact or otherwise.

"*Allowed*" means, with reference to any Claim, (a) any Claim against the Debtor which has been listed by the Debtor in its Schedules, as such Schedules may be amended by the Debtor from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent, and with respect to which no contrary proof of claim has been filed, (b) any Claim specifically allowed under the Plan, (c) any Claim which is not Disputed or (d) any Claim the amount or existence of which, if Disputed, (i) has been determined by a Final Order of a court of competent jurisdiction other than the Court or (ii) has been allowed by Final Order of the Court.

"*Bank Guaranty Secured Claim*" means a Claim that is secured by a valid, perfected and enforceable lien on property in which the Debtor's estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim Holder's interest in the estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined by a Final Order of the Bankruptcy Court, and that arises from that certain Amended and Restated Senior Facilities Agreement between Vespucci Finance Sarl, as Parent, the Companies named therein as Borrowers and Guarantors, and the Royal Bank of Scotland plc as Mandated

Lead Arranger, Facility Agent and the Security Agent (as may be amended, modified or restated from time to time), originally dated as of October 23, 2007.

"*Bankruptcy Code*" means Title 11 of the United States Code, as now in effect or hereafter amended.

"*Bankruptcy Court*" means the United States District Court for the District of Delaware having jurisdiction over the Chapter 11 Case and, to the extent of any reference made pursuant to section 157 of Title 28 of the United States Code, the unit of such District Court pursuant to section 151 of Title 28 of the United States Code.

"*Bankruptcy Rules*" means (a) the Federal Rules of Bankruptcy Procedure promulgated under 28 U.S.C. § 2075 and (b) the general and local rules of the Bankruptcy Court, as now in effect or hereafter amended.

"*Business Day*" means any day other than a Saturday, Sunday or any other day on which banks located in the State of New York are authorized or obligated to close.

"*Cash*" means cash and cash equivalents.

"*Causes of Action*" means all actions, causes of action, Liabilities, suits, debts, Indebtedness, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, trespasses, damages, rights, executions, claims, Claims, objections to Claims, judgments and demands whatsoever, whether known or unknown, choate or inchoate, suspected or unsuspected in law or equity or otherwise.

"*Chapter 11 Case*" means the case under chapter 11 of the Bankruptcy Code commenced on the Petition Date by the Debtor.

"*Claim*" means a claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtor.

"*Class*" means a category of Claims or Equity Interests, as described in Article III hereof.

"*Confirmation*" means the entry, within the meaning of Bankruptcy Rules 5003 and 9021, of the Confirmation Order by the Bankruptcy Court on its docket.

"*Confirmation Date*" means the date upon which Confirmation occurs.

"*Confirmation Hearing*" means the hearing held by the Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

"*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to the provisions of the Bankruptcy Code.

"*Contract*" means any agreement, lease, license, evidence of Indebtedness, mortgage, indenture, security agreement or other contract or instrument.

"*Creditor*" means any Person holding a Claim against the Debtor that arose on or before the Petition Date.

"*Debtor*" means Samsonite Company Stores, LLC.

"*Debtor in Possession*" means the Debtor, as debtor in possession in the Chapter 11 Case.

"*Disputed*" means, with respect to Claims, any such Claim

(a)     that is listed on the Schedules as unliquidated, disputed or contingent; or

(b)     as to which the Debtor or any other party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules or which is otherwise disputed by a Debtor in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order.

"*Distribution Reserve*" has the meaning set forth in Section 8.1 of the Plan.

"*Effective Date*" means the date (a) which is on or after the Confirmation Date, or, if such date is not a Business Day, the next succeeding Business Day; provided, however, that if, as of such date, all conditions to the occurrence of the Effective Date set forth in Section 10.1 of the Plan have not been satisfied (or waived), then the first Business Day on which all such conditions have been satisfied (or waived) and (b) on which no stay of the Confirmation Order is in effect.

"*Equity Interest or Interest*" means any share of common stock or other instrument evidencing an ownership interest in the Debtor, whether or not transferable, and any option, warrant, or right, contractual or otherwise, to acquire, sell or subscribe for any such interest.

"*Estimated Amount*" has the meaning set forth in Section 8.1 of the Plan.

"*Executory Contracts and Unexpired Leases*" means all executory contracts and unexpired leases to which the Debtor is a party.

"*Fee Claims*" means an Administrative Claim under section 330(a), 331 or 503 of the Bankruptcy Code for compensation of a Professional or other Person for services rendered or expenses incurred in the Chapter 11 Case on or prior to the Confirmation Date (including the reasonable non-legal expenses of the individual members of the Creditors' Committee (if any) incurred in the discharge of their duties as members of the Creditors' Committee).

"*Final Order*" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter, which has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek reconsideration or certiorari has expired and no appeal or petition for reconsideration or certiorari has been timely taken, or as to which any appeal that has been taken or any petition for reconsideration or certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which reconsideration or certiorari was sought.

"*Global Restructuring*" means the fully consensual out-of-court global restructuring of Samsonite LLC and its affiliates and subsidiaries and all agreements, including the Restructuring Implementation Deed dated 2 September 2009, the Guarantee dated 28 August 2009, the Amendment and Restatement relating to the Senior Facilities Agreement originally dated 23 October 2007 and all related Finance Documents (as defined in the Senior Facilities Agreement originally dated 23 October 2007), and transactions entered into in connection therewith.

"*Government*" has the meaning set forth in Section 10.6(b) of the Plan.

"*Holder*" means a holder of a Claim or Equity Interest, as applicable.

"*Indebtedness*" of any Person means all obligations of such Person (i) for borrowed money or (ii) in the nature of a guarantee of the obligations for borrowed money of any other Person.

"*Insured Claim*" means any Claim arising from an incident or occurrence alleged to have occurred prior to the Effective Date that is covered under an insurance policy applicable to the Debtor or its business.

"*Intercompany Claims*" means any Claim held by any affiliate or subsidiary of the Debtor against the Debtor, including, without limitation, (a) any account reflecting intercompany book entries by such affiliate or subsidiary with respect to the Debtor, (b) any Claim not reflected in book entries that is held by such affiliate or subsidiary, and (c) any derivative Claim asserted or assertable by or on behalf of such affiliate or subsidiary against the Debtor.

"*Liabilities*" means all Indebtedness, obligations, and other liabilities of a Person (whether known or unknown, whether absolute, accrued, contingent, fixed or otherwise, and whether due or to become due).

"*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

"*Other Secured Claim*" means a Claim, other than a Bank Guaranty Secured Claim, that is secured by a valid, perfected and enforceable lien on property in which the Debtor's estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim Holder's

interest in the estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined by a Final Order of the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code.

"*Person*" means any natural person, corporation, general partnership, limited partnership, proprietorship, other business organization, trust, union, estate, entity, association, governmental unit or regulatory authority.

"*Petition Date*" means the date on which the Debtor filed its petition for relief commencing the Chapter 11 Case.

"*Plan*" means this chapter 11 plan (including all exhibits and schedules annexed hereto), if any, either in its present form or as it may be altered, amended, modified or supplemented from time to time in accordance with this chapter 11 plan, the Bankruptcy Code and the Bankruptcy Rules.

"*Plan Supplement*" means the supplement to the Plan containing the Plan Supplement Documents.

"*Plan Supplement Documents*" means the documents to be included in the Plan Supplement, to be filed no later than ten (10) business days prior to the Confirmation Hearing.

"*Priority Claim*" means any Claim against the Debtor, accorded priority under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Expense.

"*Priority Tax Claim*" means any Claim accorded priority under section 507(a)(8) of the Bankruptcy Code.

"*Professionals*" means (a) all professionals employed in the Chapter 11 Case pursuant to sections 327 or 1103 of the Bankruptcy Code and (b) all professionals seeking compensation or reimbursement of expenses pursuant to section 503(b)(4) of the Bankruptcy Code.

"*Pro Rata*" means, as the context may dictate, the ratio of the amount of an Allowed Claim in a particular Class to the aggregate amount of all Allowed and Disputed Claims in such Class.

"*Reinstated*" means (a) leaving unaltered the legal, equitable and contractual rights to which a Claim entitles the Holder of such Claim so as to leave such Claim unimpaired in accordance with section 1124 of the Bankruptcy Code, or (b) notwithstanding any contractual provision or applicable law that entitles the Holder of such Claim to demand or receive accelerated payment of such Claim after the occurrence of a default, (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code, (ii) reinstating the maturity of such Claim as such maturity existed before such default, (iii) compensating the holder of a Claim for any damages incurred as a result of any reasonable reliance by such Holder of a Claim on such contractual provision or such applicable law, and (iv) not otherwise altering the legal, equitable, or contractual rights to which such Claim entitles the Holder of such Claim; *provided, however*, that any contractual right that does not pertain to the payment when due of principal and interest on the obligation on which such Claim is based, including, but not limited to, financial covenant ratios, negative pledge covenants, covenants or restrictions on merger or consolidation, and affirmative covenants regarding corporate existence, prohibiting

certain transactions, change of control or actions contemplated by this Plan, or conditioning such transactions or actions on certain factors, shall not be required to be cured or reinstated to achieve reinstatement.

"*Reorganized Debtor*" means the successor to the Debtor on and after the Effective Date.

"*Schedules*" means the schedules of assets and liabilities, schedules of executory contracts and the statement of financial affairs filed by the Debtor as required by section 521 of the Bankruptcy Code, the Official Bankruptcy Forms and the Bankruptcy Rules, and any and all amendments thereto.

"*Secured Claim*" means a Bank Guaranty Secured Claim or an Other Secured Claim.

"*Taxes*" means any federal, state, county or local taxes, charges, fees, levies, other assessments, or withholding taxes or charges imposed by any governmental unit, and includes any interest and penalties (civil or criminal) on or additions to any such taxes and any expenses incurred in connection with the determination, settlement or litigation of any tax liability.

"*Unsecured Claim*" means any Claim that is not a Secured Claim, an Administrative Expense, a Priority Tax Claim or a Priority Claim.

1.2     Other Terms.  The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection or clause contained in the Plan.  A term used herein and not defined herein shall have the meaning ascribed to that term, if any, in the Bankruptcy Code.

# ARTICLE II
## TREATMENT OF ADMINISTRATIVE
## EXPENSES AND PRIORITY TAX CLAIMS

2.1     <u>Administrative Expenses</u>.  Subject to the provisions of sections

330(a) and 331 of the Bankruptcy Code, as applicable, each Holder of an Allowed Claim

for an Administrative Expense shall receive in full and final satisfaction of such Claim,

(a) Cash in the full amount of such Allowed Claim, without interest, or (b) such amount

at such other date and upon such other terms as may be agreed upon in writing by such

Holder and the Debtor or otherwise approved by Final Order of the Bankruptcy Court.

2.2     <u>Priority Tax Claims</u>.  Each Holder of an Allowed Priority Tax

Claim shall receive in full and final satisfaction of such Claim, Cash (a) in the full

amount of such Allowed Priority Tax Claim, without interest, on or as soon as practicable

after the later of (i) the Effective Date, (ii) the date on which such Priority Tax Claim

becomes Allowed, and (iii) the date on which the Holder of such Allowed Priority Tax

Claim and the Debtor otherwise agree in writing, or, at the Debtor's option, (b) within

such other period and upon such other terms as provided in section 1129(a)(9)(C) of the

Bankruptcy Code.

2.3     <u>Fee Claims</u>.  All requests for compensation or reimbursement of

Fee Claims pursuant to sections 327, 328, 330, 331, 503 or 1103 of the Bankruptcy Code

for services rendered prior to the Confirmation Date shall be filed and served on the

Reorganized Debtor and its counsel, the United States Trustee, counsel to the Creditors'

Committee (if any), and such other entities who are designated by the Bankruptcy Rules,

the Confirmation Order or any other order(s) of the Court, no later than sixty (60) days

after the Confirmation Date.  Holders of Fee Claims that are required to file and serve

applications for final allowance of their Fee Claims and that do not file and serve such

applications by the required deadline shall be forever barred from asserting such Fee

Claims against the Debtor, the Reorganized Debtor or its respective properties, and such

Fee Claims shall be deemed discharged as of the Effective Date.  Objections to any Fee

Claims must be filed and served on the Reorganized Debtor and its counsel and the

requesting party no later than thirty (30) days (or such other period as may be allowed by

order of the Court) after the date on which an application for final allowance of such Fee

Claims was filed and served.

## ARTICLE III
## CLASSIFICATION AND TREATMENT OF
## CLAIMS AND EQUITY INTERESTS

3.1      _Classification_.  Claims other than Claims for Administrative

Expenses and Priority Tax Claims are classified for all purposes as follows:

> Class 1:  Priority Claims
> Class 2:  Secured Claims
> Class 3:  Unsecured Claims
> Class 4:  Equity Interests

3.2      _Treatment of Allowed Claims_.

(a)      _Class 1:  Priority Claims_.  On or as soon as practicable after the

later of (i) the Effective Date, (ii) the date such Priority Claim becomes an Allowed

Claim, and (iii) the date on which the Holder of such Allowed Priority Claim and the

Debtor otherwise agree in writing, in full and final satisfaction of such Priority Claim, the

legal, equitable, and contractual rights to which such Allowed Priority Claim entitles the

Holder of such Allowed Priority Claim shall be left unaltered.  At the Debtor's option,

the Debtor may pay any Allowed Priority Claims in full, in Cash.  The treatment

provided in this Section 3.2(a) will result in the payment of any Allowed Priority Claim

in Cash by the Debtor in an amount equal to such Allowed Priority Claim on the date

provided in this Section 3.2(a). Class 1 is unimpaired under the Plan under section 1124(1) of the Bankruptcy Code, and the Holders of Allowed Class 1 Claims are deemed to have accepted the Plan and are, therefore, not entitled to vote to accept or reject the Plan.

(b) *Class 2: Secured Claims.* On or as soon as practicable after the Effective Date, in full and final satisfaction of such Claims, the legal, equitable, and contractual rights to which such Allowed Secured Claims in Class 2 entitles the Holder of such Claims shall be left unaltered. Class 2 is unimpaired under the Plan and is deemed to have accepted the Plan under section 1124(1) of the Bankruptcy Code. The Holders of Allowed Secured Claims in Class 2 are deemed to have accepted the Plan and are, therefore, not entitled to vote to accept or reject the Plan.

(c) *Class 3: Unsecured Claims.* On or as soon as practicable after the later of (i) the Effective Date, (ii) the date an Unsecured Claim in Class 3 becomes an Allowed Claim, and (iii) the date on which the Holder of such Allowed Unsecured Claim in Class 3 and the Debtor otherwise agree in writing, in full and final satisfaction of such Claim, the legal, equitable, and contractual rights to which such Allowed Unsecured Claim in Class 3 entitles the Holder of such Allowed Unsecured Claim shall be left unaltered. At the Debtor's option, the Debtor may pay any Allowed Unsecured Claim in full, in Cash. The treatment provided in this Section 3.2(c) will result in the payment by the Debtor of any Allowed Unsecured Claim in Class 3 in Cash in an amount equal to such Allowed Unsecured Claim in such Class on the date provided in this Section 3.2(c). Class 3 is unimpaired under the Plan and is deemed to have accepted the Plan under section 1124(1) of the Bankruptcy Code. The Holders of Allowed Unsecured Claims in

Class 3 are deemed to have accepted the Plan and are, therefore, not entitled to vote to accept or reject the Plan.

3.3    Treatment of Equity Interests.

(a)    *Class 4: Equity Interests.*  The Holders of Class 4 Equity Interests shall have such Equity Interests Reinstated on the Effective Date.  Class 4 is unimpaired under the Plan and is deemed to have accepted the Plan under section 1124(l) of the Bankruptcy Code.  The Holders of Equity Interests in Class 4 are deemed to have accepted the Plan and are, therefore, not entitled to vote to accept or reject the Plan.

## ARTICLE IV
## VOTING ON THE PLAN

4.1    No Classes are Entitled to Vote on the Plan.  Classes 1, 2, 3 and 4 are unimpaired under the Plan and, pursuant to section 1126(f) of the Bankruptcy Code, are conclusively presumed to have accepted the Plan.

## ARTICLE V
## IMPLEMENTATION OF THE PLAN

5.1    Intercompany Claims.  Notwithstanding anything to the contrary herein, Intercompany Claims will be adjusted, continued or discharged to the extent determined appropriate by the Debtor or the Reorganized Debtor, in their sole discretion.  Any such transaction may be effected on or subsequent to the Effective Date without any further action by the Debtor, the Debtor in Possession, or the Reorganized Debtor.

5.2    Corporate Governance and Management of the Reorganized Debtor

(a)    Sole Member.  Samsonite LLC will be the Reorganized Debtor's sole member.

(b)     Management of the Reorganized Debtor. The officers of the Reorganized Debtor shall be substantially the same as the officers of the Debtor on the Confirmation Date.  The Reorganized Debtor's officers shall serve in accordance with any existing employment agreement with the Reorganized Debtor and applicable nonbankruptcy law, as the case may be.

(c)     Amended and Restated Articles of Organization, and Amended and Restated Limited Liability Company Agreement.
The adoption of the Amended and Restated Articles of Organization and Amended and Restated Limited Liability Company Agreement shall be deemed to have occurred and be effective as of the Effective Date without any further action by the sole member or stockholder (as the case may be) of the Debtor or Reorganized Debtor.  The Amended and Restated Articles of Organization will, among other things, contain appropriate provisions prohibiting the issuance of nonvoting equity securities to the extent required by section 1123(a)(6) of the Bankruptcy Code.  On or prior to the Effective Date, the Debtor will, if required by applicable state law, file with the Secretary of State of the appropriate jurisdiction the Amended and Restated Articles of Organization.

5.3     Powers of Officers.  The officers of the Debtor or the Reorganized Debtor, as the case may be, shall have the power to enter into and to execute any Plan Supplement Document to which the Reorganized Debtor is to be a party and (subject to the approval of the sole member of the Reorganized Debtor) to take such other or further action as they deem reasonable and appropriate to effectuate the terms of the Plan.

5.4     Plan Funding.  All cash necessary for the Reorganized Debtor to make payments required by this Plan shall be obtained from (i) the Debtor's existing cash balances and (ii) from the Debtor's parent, Samsonite LLC.

# ARTICLE VI
## EFFECT OF CONFIRMATION OF THE PLAN

6.1     <u>Continued Corporate Existence</u>.  The Debtor, as a Reorganized

Debtor, shall continue to exist after the Effective Date with all of the powers of a limited

liability company, under the laws of the State of Indiana and without prejudice to any

right to alter or terminate such existence (whether by merger or otherwise) under such

applicable state law, except as such rights may be limited and conditioned by the Plan

and the documents and instruments executed and delivered in connection herewith.  In

addition, the Reorganized Debtor may operate its business free of any restrictions

imposed by the Bankruptcy Code, the Bankruptcy Rules or by the Court, subject only to

the terms and conditions of the Plan as well as the documents and instruments executed

and delivered in connection herewith, including without limitation, the documents and

instruments included in the Plan Supplement.

6.2     <u>Dissolution of Creditors' Committee</u>.  The Debtor does not

anticipate a Creditors' Committee will be formed in the Chapter 11 Case because all

unsecured creditors are unimpaired under this Plan.  Notwithstanding this, if a Creditors

Committee is appointed, the Creditors' Committee shall continue in existence until the

Effective Date and shall continue to exercise those powers and perform those duties

specified in section 1103 of the Bankruptcy Code and shall perform such other duties as

it may have been assigned by the Court prior to the Effective Date.  On the Effective

Date, the Creditors' Committee shall be dissolved and its members shall be deemed

released of all of their duties, responsibilities and obligations in connection with the

Chapter 11 Case or this Plan and its implementation, and the retention or employment of

the Creditors' Committee's attorneys, financial advisors, and other agents shall terminate

except that the Creditors' Committee shall continue to have standing and a right to be heard with respect to (i) all Fee Claims, (ii) any appeals of the Confirmation Order, (iii) any adversary proceedings pending as of the Effective Date to which it may be a party, and (iv) post-Effective Date modifications to the Plan.

6.3  <u>Vesting of Property</u>.  Except as otherwise expressly provided in the Plan, on the Effective Date, or as soon as practicable thereafter, the Reorganized Debtor shall be vested with all of the property of the Debtor's estate free and clear of all Claims, Liens, encumbrances, charges and other interests of creditors and equity security holders.

## ARTICLE VII
## DISTRIBUTIONS

7.1  <u>Distributions Generally</u>.  All distributions under the Plan shall be made by the Reorganized Debtor.

7.2  <u>Manner of Payment under the Plan</u>.  Payments of Cash by the Reorganized Debtor pursuant to the Plan may be made by check drawn on a domestic bank and shall be made to the address of the Holder of such Allowed Claim as most recently indicated on or prior to the Effective Date on the Debtor's records.  At the option of the Reorganized Debtor, payments may be made by wire transfer from a bank.

7.3  <u>Surrender of Collateral, Surrender and Cancellation of Instruments</u>. Notwithstanding any other provision of the Plan, no Holder of a Claim based on an instrument shall be entitled to any distribution under the Plan until such Holder shall have first surrendered or caused to be surrendered to the Reorganized Debtor such instrument or, alternatively, documents reasonably satisfactory to the Reorganized Debtor evidencing (a) succession of title to such Holder, or (b) an affidavit of loss and indemnity with respect to such instrument in a form customarily utilized for such purposes together

with, if the Reorganized Debtor so requests, a bond in form and substance (including as to amount) reasonably satisfactory to the Reorganized Debtor.

7.4    Setoffs.  Except as provided under the Plan, the Debtor and/or Reorganized Debtor may, but shall not be required to, set off against any Claim and the payments to be made pursuant to the Plan in respect of such Claim any claims of any nature whatsoever that the Debtor may have against the Claim Holder, but neither the Debtor's failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such claim the Debtor may have against such Claim Holder.

7.5    Undeliverable or Returned Distributions.  If any Allowed Claim Holder's distribution is returned to the Reorganized Debtor as undeliverable, no further distributions shall be made to such Claim Holder unless and until the Reorganized Debtor is notified in writing of such Holder's then current address.  Upon receipt by the Reorganized Debtor, returned Cash shall not earn any interest or be entitled to any dividends or other accruals of any kind.  Any Holder of an Allowed Claim that does not assert a claim pursuant to this Section 7.5 for a returned distribution within one (1) year after the Effective Date shall be forever barred from asserting any such claim against the Debtor or its property, the Reorganized Debtor or its property or other property transferred pursuant to the Plan.  In such cases, any Cash held for distribution on account of such Allowed Claim shall re-vest in the Reorganized Debtor to be distributed in accordance with the Plan.  Nothing contained in the Plan shall require the Debtor or the Reorganized Debtor to attempt to locate any Holder of an Allowed Claim.

7.6     Interest and Penalties on Claims.  Unless otherwise specifically provided for in this Plan or the Confirmation Order, required by applicable bankruptcy law, or necessary to render a Claim unimpaired, postpetition interest and penalties shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to interest and penalties accruing on or after the Petition Date through the date that such Claim is satisfied in accordance with the terms of this Plan.

## ARTICLE VIII
## PROVISIONS FOR TREATMENT OF DISPUTED ADMINISTRATIVE EXPENSES AND DISPUTED CLAIMS

8.1     Reserve for Disputed Administrative Expenses and Disputed Claims and Bonding Requirements.  On the Effective Date, except as otherwise provided in this Section 8.1, the Reorganized Debtor shall maintain Cash (the "Distribution Reserve") equal to one hundred percent (100%) of (a) the amount that the Holders of Disputed Claims would be entitled to receive under the Plan if such Disputed Claims were Allowed Claims in the full amount asserted by the Holders of such Claims, and (b) an appropriate estimate for Administrative Expenses that have not been Allowed as of the Effective Date.  The Cash so held shall be held by the Reorganized Debtor for the benefit of Holders of such Disputed Claims and Administrative Expenses, pending determination of entitlement thereto.  Upon the request of the Reorganized Debtor at any time, the Bankruptcy Court may estimate and determine by a Final Order the estimated amount (the "Estimated Amount") of any Disputed Claim as of the Effective Date and such Estimated Amount shall be the amount reserved for such Disputed Claim.  Any claimant holding a Disputed Claim so estimated will receive no more than the Estimated Amount from the Distribution Reserve and will not have recourse to the Debtor, the Reorganized

Debtor, or other property transferred pursuant to the Plan should the Allowed Claim of such claimant exceed such Estimated Amount.

8.2 <u>Disposition of Distribution Reserve</u>. Cash held in the Distribution Reserve shall be distributed by the Reorganized Debtor to a Holder of a Disputed Claim or Administrative Expense when, and to the extent that, such Disputed Claim or Administrative Expense becomes Allowed, or, as applicable, is estimated as provided in Section 8.1 hereof, pursuant to a Final Order. Such distribution shall be made to the Holder of such Disputed Claim or Administrative Expense in an amount equal to the amount in which such Disputed Claim or Administrative Expense becomes Allowed, or, if applicable, in an amount equal to the Estimated Amount of such Disputed Claim. If a Disputed Claim is disallowed or Allowed by Final Order in an amount that is less than the amount of the Disputed Claim, the resulting surplus shall be released from the Distribution Reserve and shall be distributed pursuant to the terms of the Plan.

8.3 <u>Resolution of Disputed Claims</u>. Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, the Reorganized Debtor shall have the exclusive right from and after the Effective Date to make, file, prosecute, set off and settle objections to Claims.

## ARTICLE IX
## <u>EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>

9.1 <u>Assumption of Executory Contracts and Unexpired Leases</u>. Except as otherwise set forth herein, each Executory Contract and Unexpired Lease shall be deemed automatically assumed in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, unless such Executory Contract or Unexpired Lease:

(a)     has been previously rejected by the Debtor by Final Order of the Bankruptcy Court;

(b)     has been rejected by the Debtor by order of the Bankruptcy Court as of the Effective Date, which order becomes a Final Order after the Effective Date;

(c)     is the subject of a motion to reject filed by the Debtor under section 365 of the Bankruptcy Code pending as of the Effective Date;

(d)     is listed on the Schedule of rejected Executory Contracts and Unexpired Leases, attached hereto as Exhibit A; or

(e)     is otherwise rejected pursuant to the terms herein.

An Executory Contract or Unexpired Lease that is deemed to be assumed pursuant to the foregoing sentence shall be referred to as an "Assumed Contract." Except as otherwise provided in the following sentence, assumed contracts will be cured by being Reinstated and all cure payments under any assumed contract will be made by the Reorganized Debtor on the Effective Date or as soon as practicable thereafter. In the event of a dispute, cure payments required by section 365(b)(1) of the Bankruptcy Code shall be paid upon entry of a Final Order resolving such dispute; _provided, however_, if an objection to cure amount is sustained by the Bankruptcy Court, the Reorganized Debtor, in its sole discretion, may elect to reject such Executory Contract or Unexpired Lease in lieu of assuming it. Entry of the Confirmation Order by the Bankruptcy Court shall constitute findings by the Bankruptcy Court that (i) the Reorganized Debtor has properly provided for the cure of any defaults that might have existed consistent with the requirements of section 365(b)(1) of the Bankruptcy Code, (ii) each assumption is in the best interest of the Reorganized Debtor, its estate, and all parties in interest in the Chapter 11 Case, and (iii) the requirements for

assumption of any Executory Contract or Unexpired Lease to be assumed have been satisfied.

9.2      <u>Rejection of Executory Contracts and Unexpired Leases</u>.

Executory Contracts and Unexpired Leases set forth on Exhibit A attached hereto shall be deemed rejected as of the corresponding date set forth on Exhibit A hereto. The Debtor reserves the right, at any time prior to the Effective Date, except as otherwise specifically provided in this Plan, to remove any Executory Contract or Unexpired Lease from Exhibit A or to seek to reject any Executory Contract or Unexpired Lease to which the Debtor is a party and to file a motion requesting authorization for the rejection of any such Executory Contract or Unexpired Lease. Any personal property left by the Debtor on the premises related to Unexpired Leases rejected pursuant to this Plan or orders of the Bankruptcy Court shall be deemed abandoned pursuant to section 554 of the Bankruptcy Code. Non-Debtor counterparties to Unexpired Leases rejected pursuant to the Plan or orders of the Bankruptcy Court may dispose of any such personal property in their sole and absolute discretion without liability to the Debtor.

Each non-Debtor counterparty to an Executory Contract or Unexpired Lease rejected pursuant to this Plan shall have ten (10) days after service of Exhibit A hereto upon such counterparty to file a written objection to the rejection of its Executory Contract or Unexpired Lease and serve it in a manner to be actually received by each of the following persons (i) counsel to the Debtor: Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019, Attn: Jeffrey D. Saferstein, Esq. and Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, Delaware 19801, Attn: Pauline K.

Morgan, Esq., and (ii) the U.S. Trustee, J. Caleb Boggs Federal Building, Suite 2207, Lockbox 35, 844 N. King Street, Wilmington, DE 19801, Attn: David M. Klauder, Esq. The Debtor shall promptly ask the Bankruptcy Court to schedule a hearing to consider any such objections that cannot be consensually resolved by the Debtor and the objecting non-Debtor counterparty.

      9.3    <u>Rejection Damages Bar Date for Rejections Pursuant to Plan</u>. If the rejection of an Executory Contract or Unexpired Lease pursuant to this Plan results in a Claim, then such Claim shall be forever barred and shall not be enforceable against the Debtor or Reorganized Debtor or their properties, or any of their interests in properties as agent, successor or assign, unless a Proof of Claim is filed with the claims agent and served upon counsel to the Reorganized Debtor within thirty (30) days after the later of (i) entry of the Confirmation Order, or (ii) the effective date of rejection of the Executory Contract or Unexpired Lease. The Debtor shall give notice of the bar date established by this section 9.3 to the non-Debtor counterparties to the Executory Contracts and Unexpired Leases on Exhibit A hereto by service of this Plan, the Confirmation Order or otherwise.

      9.4    <u>Compensation and Benefit Programs</u>. All of the Debtor's programs, plans, agreements and arrangements relating to employee compensation and benefits, including, without limitation, all savings plans, retirement plans, healthcare plans, disability plans, severance plans, incentive plans, and life, accidental death and dismemberment insurance plans, entered into before the Petition Date and not since terminated, will be deemed to be, and will be treated as though they are, executory contracts that are assumed under Section 9.1 of this Plan, and the Debtor's and

Reorganized Debtor's obligations under such programs, plans, agreements and arrangements will survive confirmation of this Plan and will be fulfilled in the ordinary course of business.

## ARTICLE X
## RELEASES AND INJUNCTION

10.1    Discharge of the Debtor.  Except as otherwise provided herein, the rights afforded herein and the treatment of all Claims and Equity Interests herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims or Interests of any kind or nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor, the Debtor in Possession, the Reorganized Debtor or any of their respective assets or properties, arising prior to the Effective Date.  Except as otherwise expressly specified in the Plan, the Confirmation Order shall act as of the Effective Date as a discharge of all debts of, Claims against, Liens on, and Equity Interests in the Debtor, its respective assets and properties, arising at any time before the Effective Date, regardless of whether a proof of Claim or Equity Interest with respect thereto was filed, whether the Claim or Equity Interest is Allowed, or whether the Holder thereof votes to accept the Plan or is entitled to receive a Distribution hereunder.  Except as otherwise expressly specified in the Plan, after the Effective Date, any Holder of such discharged Claim or Equity Interest shall be precluded from asserting any other or further Claim against, or Interest in, the Debtor, the Reorganized Debtor, or any of their respective assets or properties, based on any document, instrument, act, omission, transaction, or other activity of any kind or nature that occurred before the Effective Date.

10.2    Injunction.  Except as otherwise expressly provided in the Plan, the

Confirmation Order, the Plan Supplement Documents, or a separate order of the Court,

all Persons who have held, hold, or may hold Claims against, or Equity Interests in, the

Debtor that arose before or were held as of the Effective Date, are permanently enjoined,

on and after the Effective Date, from (a) commencing or continuing in any manner any

action or other proceeding of any kind against the Debtor or the Reorganized Debtor with

respect to any such Claim or Equity Interest, (b) the enforcement, attachment, collection,

or recovery by any manner or means of any judgment, award, decree, or order against the

Debtor or the Reorganized Debtor on account of any such Claim or Equity Interest,

(c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtor or

the Reorganized Debtor or against the property or interests in property of the Debtor or

the Reorganized Debtor on account of any such Claim or Equity Interest, and

(d) asserting any right of setoff or subrogation of any kind against any obligation due

from the Debtor or the Reorganized Debtor or against the property or interests in property

of the Debtor or the Reorganized Debtor on account of any such Claim or Equity Interest.

Such injunction shall extend to successors of the Debtor (including, without limitation,

the Reorganized Debtor) and its property and interests in property.

10.3    Preservation of Causes of Action.  The Reorganized Debtor shall

retain all rights and all Causes of Action accruing to it and its estate, including but not

limited to, those arising under sections 505, 544, 547, 548, 549, 550, 551, 553 and

1123(b)(3)(B) of the Bankruptcy Code, including all tax setoff and refund rights arising

under section 505, other than as expressly provided below.  Except as expressly provided

in this Plan or the Confirmation Order, nothing contained in this Plan or the Confirmation

Order shall be deemed to be a waiver or relinquishment of any such rights or Causes of Action. Nothing contained in this Plan or the Confirmation Order shall be deemed a waiver or relinquishment of any Claim, Cause of Action, right of setoff, or other legal or equitable defense that the Debtor has that is not specifically waived or relinquished by this Plan. The Reorganized Debtor shall have, retain, reserve and be entitled to assert all such Claims, Causes of Action, rights of setoff and other legal or equitable defenses that the Debtor has as fully as if the Chapter 11 Case had not been commenced, and all of the Reorganized Debtor's legal and equitable rights respecting any Claim that are not specifically waived or relinquished by this Plan may be asserted after the Effective Date to the same extent as if the Chapter 11 Case had not been commenced.

10.4 <u>Administrative Claims Incurred After the Confirmation Date</u>. Administrative Claims incurred by the Reorganized Debtor after the Confirmation Date, including (without limitation) Claims for Professionals' fees and expenses incurred after such date, may be paid by the Reorganized Debtor in the ordinary course of business and without the need for Court approval.

10.5 <u>Mutual Releases</u>. On the Effective Date, (a) the Debtor and the Reorganized Debtor, on behalf of themselves and their estates, (b) all of their respective current and former officers, directors, employees, partners, advisors, attorneys, financial advisors, accountants and other professionals, (c) the members of, and counsel and financial advisors to, the Creditors' Committee (if any), (d) the Holders of Equity Interests, (f) the Holders and their counsel and financial advisors of Bank Guaranty Secured Claims, in each case, in their respective capacities as such, (collectively clauses (a) through (f) being the "Released Parties," and each a "Released Party") shall be

deemed to and hereby unconditionally and irrevocably release each other from any and all claims, obligations, suits, judgments, damages, rights, Causes of Action and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon actions taken in their respective capacities described above or any omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor, the Chapter 11 Case, or the Plan, except that (i) no individual shall be released from any act or omission that constitutes gross negligence or willful misconduct, (ii) the Released Parties shall not relinquish or waive the right to assert any of the foregoing as a legal or equitable defense or right of set-off or recoupment against any claims or Cause of Action of any other Released Party, (iii) the foregoing release shall not apply to any contractual, financial or legal obligations owed to the Debtor or Reorganized Debtor or any obligation arising under the Plan or an agreement entered into pursuant to, in connection with or contemplated by, the Plan, and (iv) for the avoidance of doubt, the foregoing release shall not apply to any contractual, financial or legal rights or obligations arising from, or in any way related to, the Global Restructuring.

10.6    Exculpation.

(a)    Exculpation and Limitation of Liability.  The Debtor, the Reorganized Debtor and the other Released Parties (i) shall have no liability whatsoever to any Holder or purported Holder of an Administrative Expense Claim, Claim, or Equity Interest for any act or omission in connection with, or arising out of, the Plan, the Disclosure Statement, the negotiation of the Plan, the negotiation of the Plan Supplement Documents, the pursuit of approval of the Disclosure Statement, the Chapter 11 Case, the

consummation of the Plan, the administration of the Plan or the property to be distributed under the Plan, or any transaction contemplated by the Plan or Disclosure Statement or in furtherance thereof except for any act or omission that constitutes willful misconduct or gross negligence as determined by a Final Order, and (ii) in all respects, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations and any other applicable law or rules protecting such Released Parties from liability.

(b)    <u>Limitation of Governmental Releases.</u>  Notwithstanding Sections 10.5 and 10.6 of the Plan, the Plan shall not release, discharge, or exculpate any non-Debtor party from any debt owed to the United States Government and/or its agencies, including the Pension Benefit Guaranty Corporation (the "Government"), or from any liability arising under the Internal Revenue Code, the Employee Retirement Income Security Act of 1974, as amended, or the environmental laws, securities laws or criminal laws of the United States. In addition, notwithstanding Sections 10.5 and 10.6 of the Plan, the Plan shall not enjoin or prevent the Government from collecting any such liability from any such non-Debtor party.

10.7   Term of Bankruptcy Injunction or Stays. All injunctions or stays provided for in the Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

10.8   Preservation of Insurance.

(a)   Limitations on Amounts to be Distributed to Holders of Allowed Insured Claims. Distributions under the Plan to each Holder of an Allowed Claim that is an Insured Claim shall be in accordance with the treatment provided under the Plan for the Class in which such Allowed Claim is classified, but solely to the extent that such Allowed Claim is not satisfied from proceeds payable to the Holder thereof under any pertinent insurance policies and applicable law. Nothing in this Section 10.8(a) shall constitute a waiver of any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities that any Person may hold against any other Person, including the Debtor's insurance carriers.

(b)   Reinstatement and Continuation of Insurance Policies. Unless otherwise rejected during the pendency of the Chapter 11 Case, from and after the Effective Date, each of the Debtor's insurance policies in existence on and as of the Confirmation Date shall be Reinstated and continued in accordance with its terms and, to the extent applicable, shall be deemed assumed by the Reorganized Debtor pursuant to section 365 of the Bankruptcy Code.

The Debtor's discharge and release from all Claims and Equity Interests, as provided herein, shall not diminish or impair the enforceability of any insurance policy that may cover Claims against the Debtor, the Reorganized Debtor (including, without

limitation, its officers and directors) or any other person or entity. Notwithstanding any other provision of the Plan or the Confirmation Order, nothing in this Plan shall (i) impair (w) the right of any insurer to defend against any claim asserted against such insurer, (x) an insurer's status as a secured creditor to the extent applicable under the terms of the Plan, including the right to recover from any Collateral (in accordance with the applicable insurance policy), (y) an insurer's right to draw on third-party letters of credit (in accordance with the terms of the applicable insurance policy and letter of credit), or (z) any insurer's right of setoff pursuant to section 553 of the Bankruptcy Code to the extent applicable, and/or (ii) affect an insurer's right to seek arbitration of disputes between the Debtor and such insurer to the extent provided for under the terms of the applicable insurance agreement.

10.9    Officers' and Directors' Indemnification Rights and Insurance. Notwithstanding any other provisions of the Plan, the obligations of the Debtor to indemnify its current and former directors, officers, and employees against any obligations, liabilities, costs or expenses pursuant to the articles of organization or by-laws, of the Debtor, applicable state law, specific agreement, or any combination of the foregoing, shall survive the Effective Date.

10.10    Debtor's Release. As of the Effective Date, each Holder of a Claim, each of whom has, or is presumed to have, accepted the Plan, including all Holders of Administrative Expense Claims, by its acceptance of the Plan or its receipt or retention of distributions or consideration hereunder, is deemed to have released the Debtor from any right, Claim or Cause of Action whatsoever (other than the right to enforce the Debtor's obligations under the Plan or as otherwise provided in the Plan),

whether known or unknown, foreseen or unforeseen, arising from or related to the Chapter 11 Case, the Debtor, the operations of the Debtor, the Plan or any act of compliance herewith (including, without limitation, the transfer of any assets hereunder), in each case that arose before the Effective Date, in each case regardless of whether a proof of Claim is filed or deemed filed, or whether or not Allowed; provided that nothing herein shall release the Debtor from any contractual, financial or legal obligations arising from, or in any way related to, the Global Restructuring. All Persons by whom rights or property have been received or retained under the Plan shall be enjoined from commencing or continuing any action or proceeding against or affecting the Debtor's assets or properties, including by the assertion of any set-off or recoupment, other than an action or proceeding to enforce any right or obligation under the Plan.

## ARTICLE XI
## CONDITIONS PRECEDENT TO CONFIRMATION
## AND EFFECTIVENESS OF THE PLAN

11.1    <u>Conditions Precedent to the Effective Date</u>.  Consummation of the Plan and the occurrence of the Effective Date are subject to satisfaction of the following conditions:

      (a)    the Confirmation Order shall have become a Final Order; and

      (b)    the Distribution Reserve shall have been established.

11.2    <u>Waiver of Condition</u>.  The Debtor may waive the condition set forth in Section 11.1 hereof.

**ARTICLE XII**
**RETENTION OF JURISDICTION**

12.1    <u>Retention of Jurisdiction</u>.  The Chapter 11 Case shall remain subject to the jurisdiction of the Bankruptcy Court until the Effective Date.  From and after the Effective Date, and until the Chapter 11 Case is closed pursuant to section 350(a) of the Bankruptcy Code and Bankruptcy Rule 3022, the Bankruptcy Court shall retain and have exclusive jurisdiction of all matters arising out of, and related to, the Chapter 11 Case and the Plan for, among other things, the following purposes:

(a)      to determine any and all pending adversary proceedings, applications, and contested matters;

(b)      to hear and determine all matters arising out of and/or related to the Chapter 11 Case and/or the Plan;

(c)      except as otherwise provided in the Plan, to hear and determine any objections to Claims for Administrative Expenses or to proofs of Claims filed either before or after the Effective Date, including any objections to the classification of any Claim, and to liquidate and fix contingent or unliquidated Claims, and to allow or disallow any Disputed Claim (including any Disputed Administrative Expense), in whole or in part;

(d)      to ensure that distributions to Holders of Allowed Claims are accomplished as provided herein;

(e)      to enter and implement such orders as may be appropriate if the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(f)     to issue such orders in aid of execution of the Plan and all

agreements or documents created in connection with the Plan to the extent authorized by

sections 105(a) and 1142 of the Bankruptcy Code;

(g)     to consider any modifications of the Plan, to cure any defect or

omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including

the Confirmation Order;

(h)     to compel performance under the Plan and documents executed in

connection with the Plan;

(i)     to enforce remedies upon any default under the Plan;

(j)     to hear and determine all applications for compensation and

reimbursement of expenses of Professionals under sections 330 and 503(b) of the

Bankruptcy Code;

(k)     to hear and determine disputes arising in connection with the

interpretation, implementation, or enforcement of the Plan, the Confirmation Order, and

any other documents executed and delivered in connection with the Plan;

(l)     to recover all assets of the Debtor and property of its estate,

wherever located, including the prosecution and adjudication of all Causes of Action

available to the Debtor as of the Confirmation Date;

(m)     to hear and determine matters concerning state, local, and federal

taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

(n)     to enforce all orders, judgments and rulings entered in connection

with the Chapter 11 Case;

(o)     to hear any other matter not inconsistent with the Bankruptcy Code; and

(p)     to enter a final decree closing the Chapter 11 Case once all of the transactions contemplated by the Plan have been completed.

## ARTICLE XIII
## MISCELLANEOUS PROVISIONS

13.1     <u>Payment of Statutory Fees</u>.  All fees payable pursuant to section 1930 of Title 28 of the United States Code, as determined by the Bankruptcy Court at the hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid on or before the Effective Date.

13.2     <u>Bar Date for Professional Fee and Expense Claims</u>.  Unless another time is set by Final Order of the Bankruptcy Court, all applications of professional Persons under sections 330 or 503(b) of the Bankruptcy Code for allowance of compensation and reimbursement of expenses shall be filed within sixty (60) days after the Confirmation Date.

13.3     <u>Modification of the Plan</u>.  The Debtor reserves the right to amend or modify the Plan under section 1127 of the Bankruptcy Code at any time before the Confirmation Date.  After the Confirmation Date and before substantial consummation of the Plan, the Debtor or any party in interest may, so long as it does not adversely affect the treatment of Creditors under the Plan, institute proceedings in the Bankruptcy Court to amend or modify the Plan or to remedy any defect or omission or reconcile any inconsistency in the Plan or Confirmation Order, and such other matters as may be necessary to carry out the purposes and effects of the Plan, *provided, however,* that prior

notice of any such proceeding is given in accordance with Bankruptcy Rules 2002 and 9014.

13.4    _Revocation of Plan_.  The Debtor reserves the right, at any time prior to the entry of the Confirmation Order, to revoke and withdraw the Plan.  If the Debtor revokes or withdraws the Plan, it shall be null and void and, in such event, nothing contained herein shall be deemed to constitute a waiver or release of any Causes of Action or Claims by or against the Debtor or any other entity or to prejudice in any manner the rights of the Debtor or any entity in any further proceedings involving the Debtor.

13.5    _Headings_.  Headings are used in the Plan for convenience and reference only, and shall not constitute a part of the Plan for any other purpose.

13.6    _Binding Effect_.  The Plan shall be binding upon and inure to the benefit of the Debtor, the Claim Holders and their respective successors and assigns.

13.7    _Notices_.  Any notice required or permitted to be provided under the Plan shall be in writing and served by either (i) certified mail, return receipt requested, postage prepaid, (ii) hand delivery, (iii) reputable overnight delivery service, freight prepaid, or (iv) facsimile, to be addressed as follows:

If to the Debtor or to the Reorganized Debtor, or to any one of them:

> Paul, Weiss, Rifkind, Wharton & Garrison LLP
> 1285 Avenue of the Americas
> New York, New York  10019-6064
> Facsimile No. (212) 757-3990
> Attention:  Jeffrey D. Saferstein

13.8    _Governing Law_.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the internal laws of

the state of incorporation of the Debtor shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan.

   13.9 <u>Filing of Additional Documents</u>. On or before substantial consummation of the Plan, the Debtor shall file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

   13.10 <u>Further Proceedings</u>. The Debtor shall defend, at its own cost and expense, any appeal of the Confirmation Order.

   13.11 <u>Withholding and Reporting Requirements</u>. In connection with the Plan and all documents issued in connection therewith and distributions thereon, the Debtor shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements.

Dated: September 2, 2009    Respectfully submitted,

          SAMSONITE COMPANY STORES, LLC


By: _____
    Name: Donald E. Walden
    Title: Assistant Treasurer