# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| SAMSONITE COMPANY STORES, LLC, | ) | Chapter 11 |
| | ) | |
| Debtor.[1] | ) | Case No. 09-13102(___) |
| | ) | |

## DISCLOSURE STATEMENT FOR THE PLAN OF
## REORGANIZATION OF SAMSONITE COMPANY STORES, LLC

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
Jeffrey D. Saferstein (JS/5339)
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

YOUNG CONAWAY STARGATT &
TAYLOR LLP
Pauline K. Morgan (No. 3650)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Proposed Counsel for the Debtor and Debtor
in Possession

Dated: September 2, 2009

> **THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. THE DEBTOR RESERVES THE RIGHT TO AMEND, SUPPLEMENT OR OTHERWISE MODIFY THIS DISCLOSURE STATEMENT.**

---

[1] The last four digits of the Debtor's tax identification number are (6266) and its headquarters is located at 575 West Street, Suite 110, Mansfield, MA 02048.

# EXHIBITS

**(A)**  The Debtor's Plan of Reorganization under Chapter 11 of the Bankruptcy Code

**(B)**  Financial Projections and Valuation Discussion

# TABLE OF CONTENTS

I. INTRODUCTION AND SUMMARY .................................................................1
    A.    Purpose of Disclosure Statement and Plan. ...............................1
    B.    No Voting on the Plan. .................................................................2
    C.    Disclaimers. .................................................................................2
    D.    Summary of Classification and Treatment under the Plan. .........4

II. BACKGROUND AND EVENTS PRECIPITATING CHAPTER 11
CASE .......................................................................................................5
    A.    Overview of Samsonite Corporation and Samsonite
        Company Stores LLC .................................................................5
    B.    Purchase of the Company by CVC Capital Partners. .................7
    C.    Events Precipitating the Chapter 11 Case. .................................8
    D.    Filing of the Chapter 11 Case. ..................................................10

III. SUMMARY OF THE PLAN .......................................................................12
    A.    General. .....................................................................................12
    B.    Classification and Treatment of Claims and Equity Interests
        under the Plan. ..........................................................................14
    C.    Treatment of Claims and Equity Interests under the Plan. .......15
    D.    Acceptance of the Plan. ............................................................19
    E.    Provisions for the Treatment of Disputed Administrative
        Expenses and Disputed Claims .................................................19
    F.    Description of Means of Execution and Transactions to be
        Implemented in Connection with the Plan. ...............................20
    G.    Effect of Confirmation of the Plan. ..........................................23
    H.    Provisions Governing Distributions. .........................................24
    I.    Discharge, Releases, Exculpation, Injunctions and
        Insurance. ..................................................................................26
    J.    Treatment of Executory Contracts and Unexpired Leases. .......32
    K.    Retention of Jurisdiction. ..........................................................35
    L.    Conditions Precedent to Confirmation and Effectiveness. .......37
    M.    Revocation, Withdrawal, or Non-Consummation .....................38
    N.    Other Provisions .......................................................................39

IV. CONFIRMATION OF THE PLAN ..............................................................42
    A.    Confirmation Hearing. ..............................................................42
    B.    Plan Meets the Requirements for Confirmation .......................43
    C.    Alternatives to Confirmation and Consummation of the
        Plan. .........................................................................................45

V. RISK FACTORS ..........................................................................................47
    A.    Business Related Risks. .............................................................47
    B.    Certain Bankruptcy Related Considerations. .............................47

DB02:8684588.1                                                            068471.1001

VI. CERTAIN UNITED STATES FEDERAL INCOME TAX
    CONSEQUENCES OF THE PLAN ....................................................................49
        A.    Tax Consequences to Holders of Claims and Equity
             Interests......................................................................................................50

VII. CONCLUSION ...........................................................................................................51

DB02:8684588.1

068471.1001

# I.
# INTRODUCTION AND SUMMARY

A.    Purpose of Disclosure Statement and Plan.

This Disclosure Statement (the "Disclosure Statement") has been prepared pursuant to section 1125 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") by Samsonite Company Stores, LLC (the "Debtor" or "Company Stores"), as debtor and debtor in possession in the above-captioned case, in connection with the Plan of Reorganization of Samsonite Company Stores, LLC dated September 2, 2009 (as may be amended, supplemented or otherwise modified from time to time, the "Plan"). Capitalized terms that are not defined in this Disclosure Statement shall have the meaning set forth in the Plan.

The purpose of this Disclosure Statement is to set forth information: (i) regarding the history of the Debtor and its business; (ii) describing the Chapter 11 Case; (iii) concerning the Plan and alternatives to the Plan; and (iv) advising the Holders of Claims and Equity Interest of their rights under the Plan. As discussed below, no Holders of Claims or Equity Interests are impaired under the Plan, and therefore no Holders of Claims or Equity Interests are entitled to vote on the Plan. Accordingly, this Disclosure Statement is provided for informational purposes only.

The Debtor will file a supplement to the Plan and this Disclosure Statement (the "Supplement") as early as practicable but in no fewer than ten (10) business days prior to the Confirmation Hearing. The Supplement will contain, among other things, the final version of Exhibit A to the Plan, which is a list of the Executory Contracts and Unexpired Leases that the Debtor proposes to reject pursuant to the Plan,

and certain financial projections for the Debtor's business. The Supplement will be a public document that will be available at the Bankruptcy Court Clerk's Office, the official website of the Bankruptcy Court (www.deb.uscourts.gov) and the Debtor's bankruptcy information website (http://chapter11.epiqsystems.com/scs).

**THE DEBTOR BELIEVES THAT THE PLAN PROVIDES THE BEST AVAILABLE RECOVERY FOR ITS STAKEHOLDERS. NO HOLDERS OF ANY CLAIMS OR INTERESTS, INCLUDING HOLDERS OF GENERAL UNSECURED CLAIMS, ARE IMPAIRED UNDER THE PLAN, AND AS A RESULT THE RIGHT TO RECEIVE PAYMENT IN FULL ON ACCOUNT OF EXISTING OBLIGATIONS IS NOT ALTERED BY THE PLAN. CLAIMS IN CONNECTION WITH CERTAIN REAL PROPERTY LEASES THAT THE DEBTOR REJECTS IN THE CHAPTER 11 CASE OR PURSUANT TO THE PLAN WILL BE, HOWEVER, CAPPED BY OPERATION OF THE BANKRUPTCY CODE. DURING THE CHAPTER 11 CASE, THE DEBTOR INTENDS TO OPERATE ITS BUSINESS IN THE ORDINARY COURSE.**

B.    No Voting on the Plan.

All Classes of Claims and Equity Interests are unimpaired under the Plan and thus are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, no Holders of any Claims or Equity Interests are entitled to vote on the Plan.

C.    Disclaimers.

**THIS DISCLOSURE STATEMENT IS NOT INTENDED TO REPLACE A CAREFUL AND DETAILED REVIEW AND ANALYSIS OF THE PLAN BY EACH HOLDER OF A CLAIM OR EQUITY INTEREST. THIS DISCLOSURE STATEMENT IS INTENDED TO AID AND SUPPLEMENT THAT REVIEW. THE DESCRIPTION OF THE PLAN HEREIN IS A SUMMARY ONLY. HOLDERS OF CLAIMS AND EQUITY INTERESTS ARE CAUTIONED TO REVIEW THE PLAN AND ANY RELATED EXHIBITS FOR A FULL UNDERSTANDING OF THE PLAN'S PROVISIONS. THIS DISCLOSURE STATEMENT IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PLAN.**
**THIS DISCLOSURE STATEMENT HAS BEEN PREPARED BY THE DEBTOR IN GOOD FAITH AND BASED UPON INFORMATION DERIVED FROM (I) THE DEBTOR'S BOOKS AND RECORDS AND (II) THE DEBTOR'S DIRECTORS, OFFICERS, SENIOR MANAGEMENT, KEY**

PERSONNEL AND VARIOUS OF THEIR PROFESSIONALS, INCLUDING LEGAL AND FINANCIAL ADVISORS.

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE BY THE DEBTOR AS OF THE DATE HEREOF UNLESS OTHERWISE SPECIFIED HEREIN, AND THE DELIVERY OF THIS DISCLOSURE STATEMENT IS NOT AN ASSURANCE THAT THERE HAS BEEN NO CHANGE IN ANY OF THE INFORMATION SET FORTH HEREIN SINCE SUCH DATE.

THIS DISCLOSURE STATEMENT HAS NOT BEEN FILED WITH, APPROVED BY OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION (THE "SEC") OR ANY STATE SECURITIES COMMISSION, NOR HAS THE SEC OR ANY STATE SECURITIES COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED HEREIN.

FOR THE CONVENIENCE OF HOLDERS OF CLAIMS AND EQUITY INTERESTS, THIS DISCLOSURE STATEMENT SUMMARIZES THE TERMS OF THE PLAN. THIS DISCLOSURE STATEMENT IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE FULL TEXT OF THE PLAN. IF ANY INCONSISTENCY EXISTS BETWEEN THE TERMS AND PROVISIONS OF THE PLAN AND THIS DISCLOSURE STATEMENT, THE TERMS AND PROVISIONS OF THE PLAN SHALL CONTROL.

THE INFORMATION CONTAINED ON ANY WEBSITE ADDRESS MENTIONED IN THIS DISCLOSURE STATEMENT, OTHER THAN THE DISCLOSURE STATEMENT ITSELF, IS NOT INTENDED TO BE INCORPORATED HEREIN BY REFERENCE OR OTHERWISE. NO RELIANCE SHOULD BE PLACED ON ANY SUCH INFORMATION, AND THE DEBTOR DOES NOT ACCEPT LIABILITY (IN CONTRACT, TORT, NEGLIGENCE OR OTHERWISE) FOR ANY LOSS SUFFERED AS A RESULT OF ANY RELIANCE PLACED ON, OR USE MADE OF, ANY SUCH INFORMATION.

CERTAIN OF THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE FORWARD-LOOKING FORECASTS AND ARE BASED UPON CERTAIN ESTIMATES AND ASSUMPTIONS. SUCH FORWARD-LOOKING STATEMENTS CAN OFTEN BE IDENTIFIED BY THE USE OF FORWARD-LOOKING TERMINOLOGY SUCH AS "BELIEVE", "EXPECT", "MAY", "ARE EXPECTED TO", "SHOULD", "WOULD BE", "SEEK", OR "ANTICIPATE" OR SIMILAR EXPRESSIONS OR COMPARABLE TERMINOLOGY, OR BY DISCUSSIONS OF STRATEGIC PLANS OR INTENTIONS. THE DEBTOR AND ITS ADVISORS UNDERTAKE NO OBLIGATION TO PUBLICLY UPDATE OR REVISE ANY FORWARD-LOOKING STATEMENTS, WHETHER AS A RESULT OF NEW INFORMATION, FUTURE EVENTS OR OTHERWISE, EXCEPT AS REQUIRED BY APPLICABLE LAW OR REGULATIONS.

DB02:8684588.1

068471.1001

D.     Summary of Classification and Treatment under the Plan.

The Plan contemplates, among other things, the payment in full in Cash of all Administrative Expense Claims and Priority Tax Claims (or such other treatment as the Holders of such Claims agree or would leave such Claims unimpaired). Furthermore, the Plan provides for the classification and treatment of four Classes, as summarized below. This summary is qualified in its entirety by reference to the full text of the Plan, which is annexed to this Disclosure Statement as Exhibit A.[2]

| Class | Type of Claim/Interest | Treatment | Estimated Recovery | Status |
|---|---|---|---|---|
| 1 | Priority Claims | *Unimpaired*. Except to the extent that a Holder of an Allowed Priority Claim and the Debtor agree to a different treatment, each Holder of an Allowed Priority Claim will receive, in full and final satisfaction of such Claim, payment in full in Cash in an amount equal to such Allowed Priority Claim on or as soon as practicable after the later of the Effective Date and the date when such Priority Claim becomes an Allowed Priority Claim. | 100% | Unimpaired, not entitled to vote (deemed to have accepted the Plan under the Bankruptcy Code) |
| 2 | Secured Claims | *Unimpaired*. Each Holder of an Allowed Secured Claim, in full and final satisfaction of such Claim, shall have the legal, equitable, and contractual rights of such Claim left unaltered. | 100% | Unimpaired, not entitled to vote (deemed to have accepted the Plan under the Bankruptcy Code) |

---

[2]    This summary contains only a brief and simplified description of the classification and treatment of Claims and Equity Interests under the Plan. It does not describe every provision of the Plan. Accordingly, reference should be made to the entire Disclosure Statement (including exhibits) and the Plan for a complete description of the classification and treatment of Claims and Equity Interests.

4

| Class | Type of Claim/Interest | Treatment | Estimated Recovery | Status |
|-------|------------------------|-----------|--------------------|--------|
| 3 | Unsecured Claims | *Unimpaired*. Except to the extent that a Holder of an Allowed Unsecured Claim and the Debtor agree to a different treatment, each Holder of an Allowed Unsecured Claim will receive, in full and final satisfaction of such Claim, payment in full in Cash in an amount equal to such Allowed Unsecured Claim on or as soon as practicable after the later of the Effective Date and the date when such Unsecured Claim becomes an Allowed Unsecured Claim | 100% | Unimpaired, not entitled to vote (deemed to have accepted the Plan under the Bankruptcy Code) |
| 4 | Equity Interests | *Unimpaired*. The Holders of Equity Interests shall have such Equity Interests Reinstated on the Effective Date. | 100% | Unimpaired, not entitled to vote (deemed to have accepted the Plan under the Bankruptcy Code) |

# II.

# BACKGROUND AND EVENTS PRECIPITATING CHAPTER 11 CASE

A.     Overview of Samsonite Corporation and Samsonite Company Stores LLC

Samsonite Corporation ("Samsonite", and together with its affiliates and subsidiaries, the "Company"), is the world's leading travel brand. The Company is the world's largest and most recognized designer and distributor of luggage and related products. In addition to its popular luggage lines, Samsonite also produces casual and outdoor bags, business and computer cases, leather goods and travel accessories. It sells such products principally under the labels of Samsonite, American Tourister and Samsonite Black Label.

The Company sells products in more than 100 countries. Its products are principally distributed through wholesale channels. The Company's wholesale customers include specialty luggage stores, department stores, mass merchants, office superstores

DB02:8684588.1            068471.1001

and warehouse clubs. The remainder of wholesale sales are made through discounters and other distributors and agents. In addition, the Company distributes its products in approximately 500 retails stores operated by the Company's worldwide affiliates. This includes 173 retails stores operated by the Debtor in the United States.

A key component of the Company's financial success has been the continuous update of its product offerings. Historically, Samsonite's products are replaced every three years so as to maintain a contemporary brand image and satisfy evolving customer interests. The Company holds over 1800 registered trademarks or trademark applications and over 1000 patents or patent applications.

The Company's financial performance depends primarily on the market demand for its products. In 2006 and 2007, the Company had sales of $1.1 billion and $1.2 billion, respectively.

Company Stores, an Indiana limited liability company and the Debtor in this Chapter 11 Case, is a wholly-owned subsidiary of Samsonite that operates the Company's U.S. retail store business. As of July 31, 2009, Company Stores leased 173 retail stores in the United States (the "Retail Stores") located in 38 states. It employs approximately 650 people and had sales of $112 million and $108.1 million in 2007 and 2008, respectively. As of July 31, 2009, it had $233 million in total assets and $1.5 billion in total liabilities.[3]

The Retail Stores principally carry and sell the Samsonite family of branded products, which represented 92.8% of Company Stores' total sales in 2008.

---

[3] The Debtor is a guarantor under the Senior Facility (as defined below) and has pledged substantially all of its assets to secure the obligations related thereto. As of July 31, 2009 there was approximately $1.3 billion outstanding under the Senior Facility.

DB02:8684588.1 068471.1001

However, the Debtor also has certain multi-branded stores which derive approximately half of their sales from related products by third-party manufacturers.

### B. Purchase of the Company by CVC Capital Partners.

On October 24, 2007, funds managed and advised by CVC Capital Partners ("CVC"), a leading international private equity firm, acquired the Company for approximately $1.7 billion, including assumed debt (the "Acquisition"). To finance the Acquisition, the Company entered into a Senior Facilities Agreement (the "Senior Facility"), dated as of October 23, 2007, as amended and restated from time to time, by and among several of Samsonite's affiliates and subsidiaries,[4] including the Debtor, as Borrowers and Guarantors, and the Royal Bank of Scotland, plc ("RBS") as Facility Agent. The Debtor intends for its guarantee of the Senior Facility to remain in full force and effect during the Chapter 11 Case and will be unaltered by the Plan.

The Senior Facility includes a $745 million term loan (the "Term Loan"), a $100 million acquisition facility (the "Acquisition Facility"), a $125 million revolving credit facility (the "Revolving Facility"), a $10 million swingline facility (the "Swingline Facility") and a $275 million second lien facility (the "Second Lien Facility"). Samsonite, Samsonite Europe N.V. and Vespucci Investments Sarl, a parent holding company of Samsonite, are the three Borrowers under the various credit lines that form the Senior Facility. Several of Samsonite's subsidiaries, including the Debtor, are Guarantors. The Senior Facility is secured by a first lien on substantially all of the Senior Facility Parties' assets.

---

[4] The Samsonite entities party to the Senior Facility (the "Senior Facility Parties") are: Vespucci Sub Finance Sarl, Vespucci Investments Sarl, Samsonite LLC, Samsonite Europe N.V., C.V. Holdings,

C.    Events Precipitating the Chapter 11 Case.

The Company has experienced significant financial difficulties since the Acquisition, due mainly to exogenous macroeconomic factors. The global economic recession of the past year has resulted in a sudden and dramatic decline in demand for travel-related consumer goods, the Company's primary product. Worldwide air traffic, mall traffic and consumer spending on discretionary products have fallen considerably from prior years. As a result, the Company's sales, revenue and margins have all deteriorated, thereby significantly impairing the Company's liquidity. Additionally, several of the Company's operational initiatives, including the expansion of the Debtor's U.S. retail store presence, with a particular emphasis on adding "full price" store locations, as opposed to "outlet" center stores, have failed to meet revenue and profitability expectations. In an effort to right-size the Company's operations and rejuvenate growth, the Company engaged in numerous cost-cutting initiatives to protect the Company's cash reserves. These initiatives have included, among other things, work force reductions and store closures.

Despite these significant efforts to manage cash and improve liquidity, the Company's financial stability has continued to deteriorate. As the Company entered 2009, it became readily apparent that it would not have sufficient revenue to fund its operations, including significant debt service costs, without a restructuring of its business and balance sheet. As a result, the Company engaged its primary stakeholders, CVC and RBS, in negotiations to effectuate a global restructuring of the Company's capital structure and balance sheet. Since March 2009, the Company and RBS have entered into

---

LLC, Samsonite Pacific LLC, Samsonite Company Stores LLC, Global Licensing Company, LLC, Direct Marketing Ventures, LLC, and McGregor II, LLC.

DB02:8684588.1

068471.1001

several forbearance agreements on account of the Company's inability to service its existing debt obligations under the Senior Facility. After months of good faith and arm's-length discussions, the parties recently agreed to a fully consensual out-of-court global restructuring (the "Global Restructuring Agreement") that will significantly reduce the Company's outstanding indebtedness, resulting in a de-leveraging of the Company's balance sheet, while providing sufficient liquidity to meet its projected long term cash needs. On the Petition Date, the parties entered into the Implementation Agreement, which outlines the required steps in order to effectuate the Global Restructuring.

The filing of the Chapter 11 Case for only the Company Stores entity is a condition to and integral part of a much larger consensual worldwide restructuring of the Company's operations and balance sheet. With the support of RBS and CVC, the Debtor determined that this filing was necessary to refocus the Debtor's unprofitable U.S. retail store business on profitable "outlet" stores. The Debtor undertook an extensive analysis of the costs and benefits of its current number and type of retail store locations and concluded that a significant number of stores would likely remain unprofitable for several years. Specifically, and as noted below, the Debtor intends to reject as many as 84 store leases (the "Rejected Stores"), thereby decreasing the total number of the Debtor's U.S. retail stores by as much as 47%. The Debtor estimates that exiting from the Rejected Stores will result in an annual run-rate improvement in EBITDA estimated at approximately $5.3 million at current sales levels. Exiting from these unprofitable stores will eliminate a significant drain on the Debtor's liquidity, thereby allowing it to focus its capital and management resources on profitable growth initiatives.

9

For each of the Rejected Stores, the Debtor considered the location's historical performance and costs, as well as projections related to the same. Contemporaneously with evaluating the viability of continuing operations at these stores, the Debtor hired Hilco Real Estate, LLC ("Hilco Real Estate") as special real estate advisor in order to help the Debtor negotiate with many of the Rejected Stores' landlords. Despite the Debtor's and Hilco Real Estate's best efforts, these negotiations proved unsuccessful. After extensive deliberations, the Debtor determined that the filing of this Chapter 11 Case is the Debtor's best opportunity to streamline its operations and successfully and comprehensively reorganize its business affairs in an effort to maximize value for the benefit of the Debtor's collective stakeholders.

D.  Filing of the Chapter 11 Case.

1.  Overview. On the date of this Disclosure Statement, the Debtor filed a voluntary petition with the Bankruptcy Court for relief under the Bankruptcy Code. The Debtor intends to continue to operate its business and manage its properties as Debtor-in-Possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. On the date hereof, the Debtor also filed its plan of reorganization. The Plan provides for all Allowed Claims and Equity Interests to either be paid in full in Cash or Reinstated, thereby unimpairing all of the Debtor's Creditors and Equity Interest Holders. All contingent and unliquidated claims will "ride through" and be assumed by the Reorganized Debtor. Accordingly, no Creditors or Equity Interest Holders will vote on the Plan; under section 1126(f) of the Bankruptcy Code, they are presumed to have accepted the Plan.

2.  First Day Motions. The Debtor anticipates submitting a number of so-called "first day motions," along with supporting applications, to the Bankruptcy

DB02:8684588.1                                                          068471.1001

Court on the Petition Date. Generally, first day motions are filed to ensure that the Debtor can continue its operations with minimal disruption to the extent permitted under applicable law. These first day motions will seek, among others things, (a) an order authorizing the retention of Paul, Weiss, Rifkind, Wharton & Garrison LLP, as counsel to the Debtor, (b) an order authorizing the retention of Young, Conaway, Stargatt & Taylor LLP, as co-counsel to the Debtor, (c) an order authorizing the retention of Epiq Bankruptcy Solutions LLC, as claims and noticing agent to the Debtor, (d) an order authorizing the Debtor to maintain its pre-petition cash management system, including the intercompany transactions related thereto, as well as its bank accounts, business forms, stationery and checks, (e) an order fixing the date, time and place for a joint hearing to approve the Disclosure Statement and confirm the Plan, (f) an order authorizing the Debtor to pay pre-petition sales, use, franchise and property taxes, (g) an order restraining the utility companies from altering, refusing or discontinuing service and establishing adequate assurance of payment for future utilities services, (h) an order authorizing the assumption of the Agency Agreement with Hilco Merchant Resources, LLC and the store closure sales related thereto, (i) an order authorizing the employment and retention of Hilco Real Estate, LLC as Real Estate Consultant for the Debtor, (j) an order authorizing the Debtor to pay prepetition wages, employee benefits, payroll withholdings and related deductions, (k) an order authorizing the Debtor to pay prepetition claims as they come due, (l) an order authorizing the Debtor to honor prepetition customer programs and to continue such programs postpetition, and (m) an order authorizing the Debtor to use Cash Collateral and to grant adequate protection. The Court may decide not to rule upon certain of the first day motions at the Debtor's first

11

day hearing. In addition, the Debtor may file such other first day motions that the Debtor deems necessary to operate efficiently in the Chapter 11 Case.

       3.     <u>Continuation of Business; Stay of Litigation</u>. Following the commencement of the Chapter 11 Case, the Debtor will continue to operate as Debtor-in-Possession under the protection of the Bankruptcy Court. The Bankruptcy Court will have certain oversight over the Debtor's operations during the pendency of the Chapter 11 Case. Pursuant to the Bankruptcy Code, the Debtor will be authorized to operate in the ordinary course of business. Any transactions that are out of the ordinary course of business, however, will require prior approval by the Bankruptcy Court.

       An immediate effect of the filing of the Chapter 11 Case is the imposition of an automatic stay provided under the Bankruptcy Code which, with limited exceptions, will enjoin (a) the commencement or continuation of all collection efforts by creditors, (b) enforcement of liens against the Debtor, and (c) litigation against the Debtor. This stay will remain in effect for the duration of the Chapter 11 Case unless modified or lifted by order of the Bankruptcy Court.

## III.
## SUMMARY OF THE PLAN

A.    <u>General</u>.

       The following is a summary intended as a brief overview of the Plan and is qualified in its entirety by reference to the full text of the Plan, a copy of which is attached hereto as <u>Exhibit A</u>. Each Holder of a Claim or Equity Interest is urged to review carefully the terms of the Plan and its Exhibits. In the event of any inconsistency between the provisions of the Plan and the summary contained herein, the terms of the

    

Plan shall govern. All capitalized terms used and not otherwise defined in this Disclosure Statement shall have the meanings ascribed to them in the Plan.

In general, a chapter 11 plan of reorganization must (1) divide claims and equity interests into separate categories and classes, (2) specify the treatment that each category and class is to receive under such plan, and (3) contain other provisions necessary to implement the reorganization of the debtor. A chapter 11 plan may specify that the legal, equitable, and contractual rights of the holders of claims or equity interests in certain classes are to remain unchanged by the reorganization effectuated by the plan. Such classes are referred to as "unimpaired" and, because of such favorable treatment, are deemed to vote to accept the plan. Accordingly, it is not necessary to solicit votes from holders of claims or equity interests in such "unimpaired" classes. Pursuant to section 1124(1) of the Bankruptcy Code, a class of claims or equity interests is "impaired," and entitled to vote on a plan, unless the plan "leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest." *See* 11 U.S.C. § 1124(1). However, if an "impaired" class is not receiving or retaining any property or interest in property under the plan, such class is conclusively deemed to have rejected the plan and is not entitled to vote. *See* 11 U.S.C. § 1126(g). Accordingly, it is not necessary to solicit votes from the holders of claims or equity interests in such classes. The Plan proposed by the Debtor provides that all Classes of Claims and Equity Interests are unimpaired and thus are conclusively deemed to have accepted the Plan. Therefore, no Class of Claims or Equity Interests is entitled to vote on the Plan.

DB02:8684588.1

068471.1001

B.     Classification and Treatment of Claims and Equity Interests under the
       Plan.

Section 1122 of the Bankruptcy Code provides that a plan of

reorganization shall classify the claims of a debtor's creditors and equity interest holders.

A Claim or Interest is placed in a particular Class only to the extent that the Claim or

Interest falls within the description of that Class and is classified in other Classes to the

extent that any portion of the Claim or Interest falls within the description of such other

Classes.  A Claim is also placed in a particular Class for the purpose of receiving

distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim

in that Class and such Claim has not been paid, released or otherwise settled prior to the

Effective Date.

In compliance with section 1122, the Plan divides the Holders of Claims

and Equity Interests into two categories and four Classes, and sets forth the treatment

offered to each Class.  These Classes take into account the differing nature and priority of

claims against the Debtor.  Section 101(5) of the Bankruptcy Code defines "claim" as a

"right to payment, whether or not such right is reduced to judgment, liquidated,

unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal,

equitable, secured or unsecured" or a "right to an equitable remedy for breach of

performance if such breach gives rise to a right to payment whether or not such right to

an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured,

disputed, undisputed, secured or unsecured." A "claim" against a debtor also includes a

claim against property of the debtor, as provided in section 102(2) of the Bankruptcy

Code.  An "interest" is an equity interest in a debtor.

DB02:8684588.1                                                                        068471.1001

For the holder of a claim to participate in a chapter 11 plan and receive the treatment offered to the class in which it is classified, its claim must be allowed. Under the Plan, an Allowed Claim is defined as (a) any Claim against the Debtor that has been listed by the Debtor in the Schedules, as such Schedules may be amended by the Debtor from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent, and with respect to which no contrary proof of claim has been filed, (b) any Claim specifically allowed under the Plan, (c) any Claim that is not Disputed, (d) any Claim the amount or existence of which, if Disputed, (i) has been determined or allowed by a Final Order of a court of competent jurisdiction other than the Bankruptcy Court or (ii) has been allowed by a Final Order of the Bankruptcy Court.

      C.     <u>Treatment of Claims and Equity Interests under the Plan</u>.

The Plan segregates the various Claims against, and Equity Interests in, the Debtor into two categories (1) Unclassified Claims and (2) unimpaired Classes of Claims and Equity Interests. Unimpaired Classes of Claims and Equity Interests are divided into the following Classes: (i) Priority Claims (Class 1); (ii) Secured Claims (Class 2); (iii) Unsecured Claims (Class 3); and (iv) Equity Interests (Class 4).

Under the Plan, as discussed above, all of the Claims and Equity Interests are unimpaired.

**Unclassified Claims**

      1.     <u>Administrative Expense Claims</u>.

Administrative Expense Claims are unimpaired under the Plan. Each Holder of an Allowed Claim for an Administrative Expense shall receive in full and final satisfaction of such Claim, (a) Cash in the full amount of such Allowed Claim, without

15

interest, or (b) such amount at such other date and upon such other terms as may be agreed upon in writing by such Holder and the Debtor or otherwise approved by Final Order of the Bankruptcy Court.

2.  Fee Claims.

Fee Claims are unimpaired under the Plan. All requests for compensation or reimbursement of Fee Claims pursuant to sections 327, 328, 330, 331, 503 or 1103 of the Bankruptcy Code for services rendered prior to the Confirmation Date shall be filed and served on the Reorganized Debtor and its counsel, the United States Trustee, counsel to the Creditors' Committee (if any), and such other entities who are designated by the Bankruptcy Rules, the Confirmation Order or any other order(s) of the Bankruptcy Court, no later than sixty (60) days after the Confirmation Date. Holders of Fee Claims that are required to file and serve applications for final allowance of their Fee Claims and that do not file and serve such applications by the required deadline shall be forever barred from asserting such Fee Claims against the Debtor, the Reorganized Debtor or its respective properties, and such Fee Claims shall be deemed discharged as of the Effective Date. Objections to any Fee Claims must be filed and served on the Reorganized Debtor and its counsel and the requesting party no later than thirty (30) days (or such other period as may be allowed by order of the Bankruptcy Court) after the date on which an application for final allowance of such Fee Claims was filed and served.

3.  Priority Tax Claims.

Priority Tax Claims are unimpaired under the Plan. Each Holder of an Allowed Priority Tax Claim shall receive in full and final satisfaction of such Claim, Cash (a) in the full amount of such Allowed Priority Tax Claim, without interest, on or as

soon as practicable after the later of (i) the Effective Date, (ii) the date on which such Priority Tax Claim becomes Allowed, and (iii) the date on which the Holder of such Allowed Priority Tax Claim and the Debtor otherwise agree in writing, or, at the Debtor's option, (b) within such other period and upon such other terms as provided in section 1129(a)(9)(C) of the Bankruptcy Code.

### Unimpaired Classes of Claims

A brief description, qualified in all respects by reference to the Plan itself, of each Class of Claims and Equity Interests and their respective treatment under the Plan is as follows:

4.      <u>Class 1 — Priority Claims</u>.

(a)      <u>Impairment and Voting</u>.  Class 1 consists of all Priority Claims.  The Claims in Class 1 are unimpaired under the Plan.  Consequently, Holders of Allowed Priority Claims in Class 1 are deemed to have accepted the Plan and are therefore not entitled to vote to accept or reject the Plan.

(b)      <u>Treatment</u>.  On or as soon as practicable after the later of (i) the Effective Date, (ii) the date such Priority Claim becomes an Allowed Claim, and (iii) the date on which the Holder of such Allowed Priority Claim and the Debtor otherwise agree in writing, in full and final satisfaction of such Priority Claim, the legal, equitable, and contractual rights to which such Allowed Priority Claim entitles the Holder of such Allowed Priority Claim shall be left unaltered.  At the Debtor's option, the Debtor may pay any Allowed Priority Claims in full, in Cash.

5.      <u>Class 2 — Secured Claims</u>.

(a) <u>Impairment and Voting</u>. Class 2 Consists of all Secured Claims. Class 2 is unimpaired under the Plan. Consequently, Holders of Allowed Secured Claims are deemed to accept the Plan and are not entitled to vote to accept or reject the Plan.

(b) <u>Treatment</u>. On or as soon as practicable after the Effective Date, in full and final satisfaction of such Claims, the legal, equitable, and contractual rights to which such Allowed Secured Claims in Class 2 entitles the Holder of such Allowed Secured Claim shall be left unaltered.

6.     <u>Class 3 — Unsecured Claims</u>.

(a) <u>Impairment and Voting</u>. Class 3 consists of all Unsecured Claims. Class 3 is unimpaired under the Plan. Consequently, Holders of Allowed Unsecured Claims are deemed to accept the Plan and are not entitled to vote to accept or reject the Plan.

(b) <u>Treatment</u>. On or as soon as practicable after the later of (i) the Effective Date, (ii) the date an Unsecured Claim in Class 3 becomes an Allowed Claim, and (iii) the date on which the Holder of such Allowed Unsecured Claim in Class 3 and the Debtor otherwise agree in writing, in full and final satisfaction of such Claim, the legal, equitable, and contractual rights to which such Allowed Unsecured Claim in Class 3 entitles the Holder of such Allowed Unsecured Claim shall be left unaltered. At the Debtor's option, the Debtor may pay any Allowed Unsecured Claim in full, in Cash.

7.     <u>Class 4 — Equity Interests</u>.

(a) <u>Impairment and Voting</u>. Class 4 consists of all Equity Interests. Class 4 is unimpaired under the Plan. Consequently, Holders of Equity

Interests are deemed to accept the Plan and are not entitled to vote to accept or reject the Plan.

        (b)    <u>Treatment</u>. The Holders of Class 4 Equity Interests shall have such Equity Interests Reinstated on the Effective Date.

    D.    <u>Acceptance of the Plan</u>.

        1.    <u>No Classes Entitled to Vote</u>. Each Class of Claims and Equity Interests under the Plan is unimpaired. Pursuant to section 1126(f) of the Bankruptcy Code, each unimpaired Class of Claims is conclusively deemed to have accepted the Plan and, therefore, is not entitled to vote.

    E.    <u>Provisions for the Treatment of Disputed Administrative Expenses and Disputed Claims</u>

        1.    <u>Reserve for Disputed Administrative Expenses and Disputed Claims and Bonding Requirements</u>. On the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtor shall maintain Cash (the "Distribution Reserve") equal to one hundred percent (100%) of (a) the amount that the Holders of Disputed Claims would be entitled to receive under the Plan if such Disputed Claims were Allowed Claims in the full amount asserted by the Holders of such Claims, and (b) an appropriate estimate for Administrative Expenses that have not been Allowed as of the Effective Date. The Cash so held shall be held by the Reorganized Debtor for the benefit of Holders of such Disputed Claims and Administrative Expenses, pending determination of entitlement thereto. Upon the request of the Reorganized Debtor at any time, the Bankruptcy Court may estimate and determine by a Final Order the estimated amount (the "Estimated Amount") of any Disputed Claim as of the Effective Date and such Estimated Amount shall be the amount reserved for such Disputed Claim. Any claimant holding a Disputed Claim so estimated will receive no more than the Estimated Amount

        

from the Distribution Reserve and will not have recourse to the Debtor, the Reorganized Debtor, or other property transferred pursuant to the Plan should the Allowed Claim of such claimant exceed such Estimated Amount.

2.    Disposition of Distribution Reserve.  Cash held in the Distribution Reserve shall be distributed by the Reorganized Debtor to a Holder of a Disputed Claim or Administrative Expense when, and to the extent that, such Disputed Claim or Administrative Expense becomes Allowed, or, as applicable, is estimated as provided in Section 8.1 to the Plan, pursuant to a Final Order.  Such distribution shall be made to the Holder of such Disputed Claim or Administrative Expense in an amount equal to the amount in which such Disputed Claim or Administrative Expense becomes Allowed, or, if applicable, in an amount equal to the Estimated Amount of such Disputed Claim.  If a Disputed Claim is disallowed or Allowed by Final Order in an amount that is less than the amount of the Disputed Claim, the resulting surplus shall be released from the Distribution Reserve and shall be distributed pursuant to the terms of the Plan.

3.    Resolution of Disputed Claims.  Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, the Reorganized Debtor shall have the exclusive right from and after the Effective Date to make, file, prosecute, set off and settle objections to Claims.

F.    Description of Means of Execution and Transactions to be Implemented in Connection with the Plan.

1.    Intercompany Claims.  Notwithstanding anything to the contrary in the Plan, Intercompany Claims will be adjusted, continued or discharged to the extent determined appropriate by the Debtor or the Reorganized Debtor, in their sole discretion.

DB02:8684588.1                    068471.1001

Any such transaction may be effected on or subsequent to the Effective Date without any further action by the Debtor, the Debtor in Possession, or the Reorganized Debtor.

2. <u>Corporate Governance and Management of the Reorganized Debtor</u>.

(a) <u>The Sole Member</u>. Samsonite LLC will be the Reorganized Debtor's sole member.

(b) <u>Management of the Reorganized Debtor</u>. The officers of the Reorganized Debtor shall be substantially the same as the officers of the Debtor on the Confirmation Date. The Reorganized Debtor's officers shall serve in accordance with any existing employment agreement with the Debtor and applicable nonbankruptcy law, as the case may be.

(c) <u>Amended and Restated Articles of Organization, and Amended and Restated Limited Liability Company Agreement</u>. The adoption of the Amended and Restated Articles of Organization and Amended and Restated Limited Liability Company Agreement shall be deemed to have occurred and be effective as of the Effective Date without any further action by the sole member or stockholders (as the case may be) of the Debtor or Reorganized Debtor. The Amended and Restated Articles of Organization will, among other things, contain appropriate provisions prohibiting the issuance of nonvoting equity securities to the extent required by section 1123(a)(6) of the Bankruptcy Code. On or prior to the Effective Date, the Debtor will, if required by applicable state law, file with the Secretary of State of the appropriate jurisdiction the Amended and Restated Articles of Organization.

DB02:8684588.1

068471.1001

3. <u>Powers of Officers</u>. The officers of the Debtor or the Reorganized Debtor, as the case may be, shall have the power to enter into and to execute any Plan Supplement Document to which the Reorganized Debtor is to be a party and (subject to the approval of the Reorganized Debtor's sole member) to take such other or further action as they deem reasonable and appropriate to effectuate the terms of the Plan.

4. <u>Plan Funding</u>. All cash necessary for the Reorganized Debtor to make payments required by the Plan shall be obtained from (i) the Debtor's existing cash balances, and (ii) from the Debtor's parent, Samsonite LLC.

5. <u>Preservation of Causes of Action</u>. The Reorganized Debtor shall retain all rights and all Causes of Action accruing to it and its estate, including but not limited to, those arising under sections 505, 544, 547, 548, 549, 550, 551, 553 and 1123(b)(3)(B) of the Bankruptcy Code, including all tax setoff and refund rights arising under section 505, other than as expressly provided below. Except as expressly provided in the Plan or the Confirmation Order, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any such rights or Causes of Action. Nothing contained in the Plan or the Confirmation Order shall be deemed a waiver or relinquishment of any Claim, Cause of Action, right of setoff, or other legal or equitable defense that the Debtor has that is not specifically waived or relinquished by the Plan. The Reorganized Debtor shall have, retain, reserve and be entitled to assert all such Claims, Causes of Action, rights of setoff and other legal or equitable defenses that the Debtor has as fully as if the Chapter 11 Case had not been commenced, and all of the Reorganized Debtor's legal and equitable rights respecting any Claim that are not

specifically waived or relinquished by the Plan may be asserted after the Effective Date to the same extent as if the Chapter 11 Case had not been commenced.

G.   Effect of Confirmation of the Plan.

1.   Continued Corporate Existence.   The Debtor, as a Reorganized Debtor, shall continue to exist after the Effective Date with all of the powers of a limited liability company under the laws of the State of Indiana and without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) under such applicable state law, except as such rights may be limited and conditioned by the Plan and the documents and instruments executed and delivered in connection therewith.  In addition, the Reorganized Debtor may operate its business free of any restrictions imposed by the Bankruptcy Code, the Bankruptcy Rules or by the Bankruptcy Court, subject only to the terms and conditions of the Plan as well as the documents and instruments executed and delivered in connection therewith, including without limitation, the documents and instruments included in the Plan Supplement.

2.   Dissolution of Creditor's Committee.   The Debtor does not anticipate a Creditors' Committee will be formed in the Chapter 11 Case because all unsecured creditors are unimpaired under the Plan.  Notwithstanding this, if a Creditors' Committee is appointed, the Creditors' Committee shall continue in existence until the Effective Date and shall continue to exercise those powers and perform those duties specified in section 1103 of the Bankruptcy Code and shall perform such other duties as it may have been assigned by the Bankruptcy Court prior to the Effective Date.  On the Effective Date, the Creditors' Committee shall be dissolved and its members shall be deemed released of all of their duties, responsibilities and obligations in connection with the Chapter 11 Case or the Plan and its implementation, and the retention or employment

23

of the Creditors' Committee's attorneys, financial advisors, and other agents shall terminate except that the Creditors' Committee shall continue to have standing and a right to be heard with respect to (i) all Fee Claims, (ii) any appeals of the Confirmation Order, (iii) any adversary proceedings pending as of the Effective Date to which it may be a party, and (iv) post-Effective Date modifications to the Plan.

      3.    <u>Vesting of Property</u>. Except as otherwise expressly provided in the Plan, on the Effective Date, or as soon as practicable thereafter, the Reorganized Debtor shall be vested with all of the property of the Debtor's estate free and clear of all Claims, Liens, encumbrances, charges and other interests of creditors and equity security holders.

      H.    <u>Provisions Governing Distributions</u>.

      1.    <u>Manner of Payment under the Plan</u>. All distributions under the Plan shall be made by the Reorganized Debtor. Payments of Cash by the Reorganized Debtor pursuant to the Plan may be made by check drawn on a domestic bank and shall be made to the address of the Holder of such Allowed Claim as most recently indicated on or prior to the Effective Date on the Debtor's records. At the option of the Reorganized Debtor, payments may be made by wire transfer from a bank.

      2.    <u>Interest and Penalties on Claims</u>. Unless otherwise specifically provided for in the Plan or the Confirmation Order, required by applicable bankruptcy law or necessary to render a Claim unimpaired, postpetition interest and penalties shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to interest and penalties accruing on or after the Petition Date through the date such Claim is satisfied in accordance with the terms of the Plan.

      3.    <u>Withholding and Reporting Requirements</u>. In connection with the Plan and all distributions thereunder, the Reorganized Debtor shall comply with all

24

withholding and reporting requirements imposed by any federal, state, local, or foreign

taxing authority, and all distributions thereunder shall be subject to any such withholding

and reporting requirements. The Reorganized Debtor shall be authorized to take any and

all actions that may be necessary or appropriate to comply with such withholding and

reporting requirements.

        4.     <u>Setoffs</u>. Except as provided under the Plan, the Debtor and/or

Reorganized Debtor may, but shall not be required to, set off against any Claim and the

payments to be made pursuant to the Plan in respect of such Claim, any claims of any

nature whatsoever that the Debtor may have against the Claim Holder, but neither the

Debtor's failure to do so nor the allowance of any Claim hereunder shall constitute a

waiver or release by the Debtor of any such claim the Debtor may have against such

Claim Holder.

        5.     <u>Surrender of Collateral, Surrender and Cancellation of Instruments</u>.

Notwithstanding any other provision of the Plan, no Holder of a Claim based on an

instrument shall be entitled to any distribution under the Plan until such Holder shall have

first surrendered or caused to be surrendered to the Reorganized Debtor such instrument

or, alternatively, documents reasonably satisfactory to the Reorganized Debtor

evidencing (a) succession of title to such Holder, or (b) an affidavit of loss and indemnity

with respect to such instrument in a form customarily utilized for such purposes together

with, if the Reorganized Debtor so requests, a bond in form and substance (including as

to amount) reasonably satisfactory to the Reorganized Debtor.

        6.     <u>Undeliverable or Returned Distributions</u>. If any Allowed Claim

Holder's distribution is returned to the Reorganized Debtor as undeliverable, no further

DB02:8684588.1         068471.1001

distributions shall be made to such Claim Holder unless and until the Reorganized Debtor

is notified in writing of such Holder's then current address. Upon receipt by the

Reorganized Debtor, returned Cash shall not earn any interest or be entitled to any

dividends or other accruals of any kind. Any Holder of an Allowed Claim that does not

assert a claim pursuant to Section 7.5 of the Plan for a returned distribution within one (1)

year after the Effective Date shall be forever barred from asserting any such claim against

the Debtor or its property, the Reorganized Debtor or its property or other property

transferred pursuant to the Plan. In such cases, any Cash held for distribution on account

of such Allowed Claim shall re-vest in the Reorganized Debtor to be distributed in

accordance with the Plan. Nothing contained in the Plan shall require the Debtor or the

Reorganized Debtor to attempt to locate any Holder of an Allowed Claim.

     I.    <u>Discharge, Releases, Exculpation, Injunctions and Insurance</u>.

     1.    <u>Discharge of All Claims and Equity Interests</u>. Except as otherwise

provided in the Plan, the rights afforded herein and the treatment of all Claims and Equity

Interests herein shall be in exchange for and in complete satisfaction, discharge, and

release of all Claims or Interests of any kind or nature whatsoever, including any interest

accrued on such Claims from and after the Petition Date, against the Debtor, the Debtor

in Possession, the Reorganized Debtor or any of their respective assets or properties,

arising prior to the Effective Date. Except as otherwise expressly specified in the Plan,

the Confirmation Order shall act as of the Effective Date as a discharge of all debts of,

Claims against, Liens on, and Equity Interests in the Debtor, its assets and properties,

arising at any time before the Effective Date, regardless of whether a proof of Claim or

Equity Interest with respect thereto was filed, whether the Claim or Equity Interest is

Allowed, or whether the Holder thereof votes to accept the Plan or is entitled to receive a

Distribution hereunder. Except as otherwise expressly specified in the Plan, after the Effective Date, any Holder of such discharged Claim or Equity Interest shall be precluded from asserting any other or further Claim against, or Interest in, the Debtor, the Reorganized Debtor, or any of their respective assets or properties, based on any document, instrument, act, omission, transaction, or other activity of any kind or nature that occurred before the Effective Date.

2.   <u>Mutual Releases by the Debtor, Reorganized Debtor and Released Parties</u>.  On the Effective Date, (a) the Debtor and the Reorganized Debtor, on behalf of themselves and their estates, (b) all of their respective current and former officers, directors, employees, partners, advisors, attorneys, financial advisors, accountants and other professionals, (c) the members of, and counsel and financial advisors to, the Creditors' Committee (if any), (d) the Holders of Equity Interests, (f) the Holders and their counsel and financial advisors of Bank Guaranty Secured Claims, in each case, in their respective capacities as such, (collectively clauses (a) through (f) being the "Released Parties," and each a "Released Party") shall be deemed to and hereby unconditionally and irrevocably release each other from any and all claims, obligations, suits, judgments, damages, rights, Causes of Action and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon actions taken in their respective capacities described above or any omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor, the Chapter 11 Case, or the Plan, except that (i) no individual shall be released from any act or omission that constitutes gross negligence or willful misconduct, (ii) the Released Parties shall not

relinquish or waive the right to assert any of the foregoing as a legal or equitable defense or right of set-off or recoupment against any claims or Cause of Action of any other Released Party, (iii) the foregoing release shall not apply to any contractual, financial or legal obligations owed to the Debtor or Reorganized Debtor or any obligation arising under the Plan or an agreement entered into pursuant to, in connection with or contemplated by, the Plan, and (iv) for the avoidance of doubt, the foregoing release shall not apply to any contractual, financial or legal rights or obligations arising from, or in any way related to, the Global Restructuring.

3.     Exculpation.  The Debtor, the Reorganized Debtor and the other Released Parties (i) shall have no liability whatsoever to any Holder or purported Holder of an Administrative Expense Claim, Claim, or Equity Interest for any act or omission in connection with, or arising out of, the Plan, the Disclosure Statement, the negotiation of the Plan, the negotiation of the Plan Supplement Documents, the pursuit of approval of the Disclosure Statement, the Chapter 11 Case, the consummation of the Plan, the administration of the Plan or the property to be distributed under the Plan, or any transaction contemplated by the Plan or Disclosure Statement or in furtherance thereof except for any act or omission that constitutes willful misconduct or gross negligence as determined by a Final Order, and (ii) in all respects, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.  This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations and any other applicable law or rules protecting such Released Parties from liability.

DB02:8684588.1

068471.1001

4.	Injunctions.  Except as otherwise expressly provided in the Plan, the Confirmation Order, the Plan Supplement Documents, or a separate order of the Bankruptcy Court, pursuant to the Plan all Persons who have held, hold, or may hold Claims against, or Equity Interests in, the Debtor that arose before or were held as of the Effective Date, will be permanently enjoined, on and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind against the Debtor or the Reorganized Debtor with respect to any such Claim or Equity Interest, (b) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against the Debtor or the Reorganized Debtor on account of any such Claim or Equity Interest, (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtor or the Reorganized Debtor or against the property or interests in property of the Debtor or the Reorganized Debtor on account of any such Claim or Equity Interest and (d) asserting any right of setoff or subrogation of any kind against any obligation due from the Debtor or the Reorganized Debtor or against the property or interests in property of the Debtor or the Reorganized Debtor on account of any such Claim or Equity Interest.  Such injunction will extend to successors of the Debtor (including, without limitation, the Reorganized Debtor) and its respective properties and interests in property.

5.	Term of Bankruptcy Injunction or Stays.

All injunctions or stays provided for in the Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, will remain in full force and effect until the Effective Date.

6.	Preservation of Insurance.

(a)     <u>Limitations on Amounts to Be Distributed to Holders of</u>

<u>Allowed Insured Claims</u>.  Distributions under the Plan to each Holder of an Allowed

Claim that is an Insured Claim shall be in accordance with the treatment provided under

the Plan for the Class in which such Allowed Claim is classified, but solely to the extent

that such Allowed Claim is not satisfied from proceeds payable to the Holder thereof

under any pertinent insurance policies and applicable law.  Nothing in this Section shall

constitute a waiver of any claims, obligations, suits, judgments, damages, demands,

debts, rights, causes of action or liabilities that any Person may hold against any other

Person, including the Debtor's insurance carriers.

(b)     <u>Reinstatement and Continuation of Insurance Policies</u>.

Unless otherwise rejected during the pendency of the Chapter 11 Case, from and after the

Effective Date, each of the Debtor's insurance policies in existence on and as of the

Confirmation Date shall be Reinstated and continued in accordance with its terms and, to

the extent applicable, shall be deemed assumed by the Reorganized Debtor pursuant to

section 365 of the Bankruptcy Code.

The Debtor's discharge and release from all Claims and Equity Interests,

as provided herein, shall not diminish or impair the enforceability of any insurance policy

that may cover Claims against the Debtor, the Reorganized Debtor (including, without

limitation, its officers and directors) or any other person or entity.  Notwithstanding any

other provision of the Plan or the Confirmation Order, nothing in the Plan shall (i) impair

(w) the right of any insurer to defend against any claim asserted against such insurer,

(x) an insurer's status as a secured creditor to the extent applicable under the terms of the

Plan, including the right to recover from any Collateral (in accordance with the applicable

insurance policy), (y) an insurer's right to draw on third-party letters of credit (in accordance with the terms of the applicable insurance policy and letter of credit), or (z) any insurer's right of setoff pursuant to section 553 of the Bankruptcy Code to the extent applicable, and/or (ii) affect an insurer's right to seek arbitration of disputes between the Debtor and such insurer to the extent provided for under the terms of the applicable insurance agreement.

7. <u>Officers' and Directors' Indemnification Rights and Insurance</u>. Notwithstanding any other provisions of the Plan, the obligations of the Debtor to indemnify its current and former directors, officers, and employees against any obligations, liabilities, costs or expenses pursuant to the articles of incorporation or by-laws, of the Debtor, applicable state law, specific agreement, or any combination of the foregoing, shall survive the Effective Date.

8. <u>Debtor's Release</u>. As of the Effective Date, each Holder of a Claim, each of whom has, or is presumed to have, accepted the Plan, including all Holders of Administrative Expense Claims, by its acceptance of the Plan or its receipt or retention of distributions or consideration hereunder, is deemed to have released the Debtor from any right, Claim or Cause of Action whatsoever (other than the right to enforce the Debtor's obligations under the Plan or as otherwise provided in the Plan), whether known or unknown, foreseen or unforeseen, arising from or related to the Chapter 11 Case, the Debtor, the operations of the Debtor, the Plan or any act of compliance therewith (including, without limitation, the transfer of any assets thereunder), in each case that arose before the Effective Date, in each case regardless of whether a proof of Claim is filed or deemed filed, or whether or not Allowed; provided

DB02:8684588.1

068471.1001

that nothing herein shall release the Debtor from any contractual, financial or legal obligations arising from, or in any way related to, the Global Restructuring. All Persons by whom rights or property have been received or retained under the Plan shall be enjoined from commencing or continuing any action or proceeding against or affecting the Debtor's assets or properties, including by the assertion of any set-off or recoupment, other than an action or proceeding to enforce any right or obligation under the Plan.

J.   Treatment of Executory Contracts and Unexpired Leases.

1.   Assumption of Executory Contracts and Unexpired Leases.

Except as otherwise set forth in the Plan, each Executory Contract and Unexpired Lease shall be deemed automatically assumed in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, unless such Executory Contract or Unexpired Lease:

|       |                                                                                                                                      |
|-------|--------------------------------------------------------------------------------------------------------------------------------------|
| (i)   | has been previously rejected by the Debtor by Final Order of the Bankruptcy Court;                                                    |
| (ii)  | has been rejected by the Debtor by order of the Bankruptcy Court as of the Effective Date, which order becomes a Final Order after the Effective Date; |
| (iii) | is the subject of a motion to reject filed by the Debtor under section 365 of the Bankruptcy Code pending as of the Effective Date;   |
| (iv)  | is listed on the Schedule of rejected Executory Contracts and Unexpired Leases, attached as Exhibit A to the Plan; or                 |
| (v)   | is otherwise rejected pursuant to the terms of the Plan.                                                                              |

An Executory Contract or Unexpired Lease that is deemed to be assumed pursuant to the foregoing sentence shall be referred to as an "Assumed Contract." Except as otherwise provided in the following sentence, assumed contracts will be cured by

being Reinstated and all cure payments under any assumed contract will be made by the

Reorganized Debtor on the Effective Date or as soon as practicable thereafter. In the

event of a dispute, cure payments required by section 365(b)(1) of the Bankruptcy Code

shall be paid upon entry of a Final Order resolving such dispute; *provided*, *however*, if an

objection to cure amount is sustained by the Bankruptcy Court, the Reorganized Debtor,

in its sole discretion, may elect to reject such Executory Contract or Unexpired Lease in

lieu of assuming it. Entry of the Confirmation Order by the Bankruptcy Court shall

constitute findings by the Bankruptcy Court that (i) the Reorganized Debtor has properly

provided for the cure of any defaults that might have existed consistent with the

requirements of section 365(b)(1) of the Bankruptcy Code, (ii) each assumption is in the

best interest of the Reorganized Debtor, its estate, and all parties in interest in the

Chapter 11 Case, and (iii) the requirements for assumption of any Executory Contract or

Unexpired Lease to be assumed have been satisfied.

2.     Rejection of Executory Contracts and Unexpired Leases.

Executory Contracts and Unexpired Leases set forth on Exhibit A attached

to the Plan shall be deemed rejected as of the corresponding date set forth on Exhibit A

thereto. The Debtor reserves the right, at any time prior to the Effective Date, except as

otherwise specifically provided in the Plan, to remove any Executory Contract or

Unexpired Lease from Exhibit A or to seek to reject any Executory Contract or

Unexpired Lease to which the Debtor is a party and to file a motion requesting

authorization for the rejection of any such Executory Contract or Unexpired Lease. Any

personal property left by the Debtor on the premises related to Unexpired Leases rejected

pursuant to the Plan or orders of the Bankruptcy Court shall be deemed abandoned

DB02:8684588.1                                                                 068471.1001

pursuant to section 554 of the Bankruptcy Code. Non-Debtor counterparties to Unexpired Leases rejected pursuant to the Plan or orders of the Bankruptcy Court may dispose of any such personal property in their sole and absolute discretion without liability to the Debtor.

Each non-Debtor counterparty to an Executory Contract or Unexpired Lease rejected pursuant to the Plan shall have ten (10) days after service of Exhibit A to the Plan upon such counterparty to file a written objection to the rejection of its Executory Contract or Unexpired Lease and serve it in a manner to be actually received by each of the following persons (i) counsel to the Debtor: Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019, Attn: Jeffrey D. Saferstein, Esq. and Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, Delaware 19801, Attn: Pauline K. Morgan, Esq., and (ii) the U.S. Trustee, J. Caleb Boggs Federal Building, Suite 2207, Lockbox 35, 844 N. King Street, Wilmington, DE 19801, Attn: David M. Klauder, Esq. The Debtor shall promptly ask the Bankruptcy Court to schedule a hearing to consider any such objections that cannot be consensually resolved by the Debtor and the objecting non-Debtor counterparty.

3. <u>Rejection Damages Bar Date for Rejections Pursuant to Plan</u>.

If the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan results in a Claim, then such Claim shall be forever barred and shall not be enforceable against the Debtor or Reorganized Debtor or their properties, or any of their interests in properties as agent, successor or assign, unless a Proof of Claim is filed with the claims agent and served upon counsel to the Reorganized Debtor within thirty (30)

DB02:8684588.1 068471.1001

days after the later of (i) entry of the Confirmation Order, or (ii) the effective date of rejection of the Executory Contract or Unexpired Lease. The Debtor shall give notice of the bar date established by section 9.3 of the Plan to the non-Debtor counterparties to the Executory Contracts and Unexpired Leases listed on Exhibit A to the Plan by service of the Plan, the Confirmation Order or otherwise.

4. <u>Compensation and Benefit Programs</u>.

All of the Debtor's programs, plans, agreements and arrangements relating to employee compensation and benefits, including, without limitation, all savings plans, retirement plans, healthcare plans, disability plans, severance plans, incentive plans, and life, accidental death and dismemberment insurance plans, entered into before the Petition Date and not since terminated, will be deemed to be, and will be treated as though they are, executory contracts that are assumed under Section 9.1 of the Plan, and the Debtor's and Reorganized Debtor's obligations under such programs, plans, agreements and arrangements will survive confirmation of the Plan and will be fulfilled in the ordinary course of business.

K. <u>Retention of Jurisdiction</u>.

The Chapter 11 Case shall remain subject to the jurisdiction of the Bankruptcy Court until the Effective Date. From and after the Effective Date, and until the Chapter 11 Case is closed pursuant to section 350(a) of the Bankruptcy Code and Bankruptcy Rule 3022, the Bankruptcy Court shall retain and have exclusive jurisdiction of all matters arising out of, and related to, the Chapter 11 Case and the Plan for, among other things, the following purposes: (a) to determine any and all pending adversary proceedings, applications, and contested matters; (b) to hear and determine all matters arising out of and/or related to the Chapter 11 Case and/or the Plan; (c) except as

35

otherwise provided in the Plan, to hear and determine any objections to Claims for Administrative Expenses or to proofs of Claims filed either before or after the Effective Date, including any objections to the classification of any Claim, and to liquidate and fix contingent or unliquidated Claims, and to allow or disallow any Disputed Claim (including any Disputed Administrative Expense), in whole or in part; (d) to ensure that distributions to Holders of Allowed Claims are accomplished as provided herein; (e) to enter and implement such orders as may be appropriate if the Confirmation Order is for any reason stayed, revoked, modified or vacated; (f) to issue such orders in aid of execution of the Plan and all agreements or documents created in connection with the Plan to the extent authorized by sections 105(a) and 1142 of the Bankruptcy Code; (g) to consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order; (h) to compel performance under the Plan and documents executed in connection with the Plan; (i) to enforce remedies upon any default under the Plan; (j) to hear and determine all applications for compensation and reimbursement of expenses of Professionals under sections 330 and 503(b) of the Bankruptcy Code; (k) to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, and any other documents executed and delivered in connection with the Plan; (l) to recover all assets of the Debtor and property of its estate, wherever located, including the prosecution and adjudication of all Causes of Action available to the Debtor as of the Confirmation Date; (m) to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code; (n) to enforce all orders, judgments and rulings entered in connection

36

with the Chapter 11 Case; (o) to hear any other matter not inconsistent with the Bankruptcy Code; and (p) to enter a final decree closing the Chapter 11 Case once all of the transactions contemplated by the Plan have been completed.

L.  Conditions Precedent to Confirmation and Effectiveness.

1.  Conditions. The Plan will not become effective unless and until it has been confirmed and the following conditions have been satisfied in full or waived pursuant to Section 11.2 of the Plan:

(i)  the Confirmation Order shall have become a Final Order; and

(ii)  the Distribution Reserve shall have been established.

2.  Waiver of Conditions.

The Debtor may waive any or all of the conditions set forth in Article XI of the Plan at any time, without leave or order of the Bankruptcy Court and without any formal action.

3.  Effect of Failure of Conditions.

In the event one or more of the conditions specified in Article XI of the Plan have not occurred or otherwise been waived pursuant to Section 11.2 of the Plan (a) the Confirmation Order will be vacated, (b) no Distributions under the Plan will be made, (c) the Debtor and all Holders of Claims and Equity Interests will be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred, and (d) the Debtor's obligations with respect to the Claims and Equity Interests will remain unchanged and nothing contained in the Plan will constitute or be deemed a waiver or release of any Claims or Equity Interests by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any person in any further proceedings involving the Debtor.

DB02:8684588.1

068471.1001

4. <u>Vacatur of Confirmation Order</u>. If a Final Order denying confirmation of the Plan is entered, or if the Confirmation Order is vacated, then the Plan will be null and void in all respects, and nothing contained in the Plan will (a) constitute a waiver or release of any Claims against or Equity Interests in the Debtor; (b) prejudice in any manner the rights of the Holder of any Claim against, or Equity Interest in, the Debtor; (c) prejudice in any manner any right, remedy or claim of the Debtor; or (d) be deemed an admission against interest by the Debtor.

M. <u>Revocation, Withdrawal, or Non-Consummation</u>.

1. <u>Right to Revoke or Withdraw</u>.

The Debtor reserves the right to revoke or withdraw the Plan at any time prior to the Effective Date.

2. <u>Effect of Withdrawal, Revocation, or Non-Consummation</u>.

If the Debtor revokes or withdraws the Plan prior to the Effective Date, or if the Confirmation Date or the Effective Date does not occur, the Plan, any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Interest or Class of Claims or Interests), the assumption or rejection of Executory Contracts, Unexpired Leases, insurance policies or benefit plans effected by the Plan, any release, exculpation or indemnification provided for in the Plan, and any document or agreement executed pursuant to the Plan will be null and void. In such event, nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, will be deemed to constitute a waiver or release of any Claims by or against or Interests in the Debtor or any other Person, to prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor, or to constitute an admission of any sort by the Debtor or any other Person.

38

N.     Other Provisions.

1.     Payment of Statutory Fees.

All fees payable on or before the Effective Date pursuant to section 1930 of title 28 of the United States Code shall be paid by the Debtor on or before the Effective Date and all such fees payable after the Effective Date shall be paid by the Reorganized Debtor as and when such fees become due.

2.     Modification of the Plan.

(a)     Pre-Confirmation Modifications.

The Debtor may alter, amend, or modify the Plan at any time before the Confirmation Date as provided in section 1127 of the Bankruptcy Code.

(b)     Post-Confirmation Immaterial Modifications.

After the Confirmation Date and before substantial consummation of the Plan, the Debtor or any party in interest may, so long as it does not adversely affect the treatment of Creditors under the Plan, institute proceedings in the Bankruptcy Court to amend or modify the Plan or to remedy any defect or omission or reconcile any inconsistency in the Plan or Confirmation Order, and such other matters as may be necessary to carry out the purposes and effects of the Plan, *provided*, *however*, that prior notice of any such proceeding is given in accordance with Bankruptcy Rules 2002 and 9014.

(c)     Post-Confirmation Material Modifications.

After the Confirmation Date, the Debtor may, alter or amend the Plan in a manner that, as determined by the Bankruptcy Court, materially and adversely affects

DB02:8684588.1                                                                                                    068471.1001

Holders of Claims or Interests, provided that such alteration or modification is made after a hearing as provided in section 1127 of the Bankruptcy Code.

3.    Governing Law.

Unless a rule of law or procedure is supplied by Federal law (including the Bankruptcy Code and Bankruptcy Rules) or Delaware law, the laws of the State of New York (without reference to the conflicts of laws provisions thereof) shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, unless otherwise specified.

4.    Filing or Execution of Additional Documents.

On or before the Effective Date, the Debtor will file with the Bankruptcy Court or execute, as appropriate, such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, including Exhibit A to the Plan.

5.    Exemption From Transfer Taxes.

Pursuant to section 1146(a) of the Bankruptcy Code, (a) the making or assignment of any lease or sublease, or (b) the making or delivery of any other instrument whatsoever, in furtherance of or in connection with the Plan, will not be subject to any stamp tax or other similar tax.

6.    Waiver of Bankruptcy Rule 3020(e) and Federal Rule of Civil Procedure 62(a).

The Debtor may request that the Confirmation Order include (a) a finding that Bankruptcy Rule 3020(e) and Fed. R. Civ. P. 62(a) will not apply to the

Confirmation Order; and (b) authorization for the Debtor to consummate the Plan immediately after entry of the Confirmation Order.

7.      Exhibits/Schedules.

All exhibits and schedules to the Plan and the Plan Supplement are incorporated into and constitute a part of the Plan as if fully set forth therein.

8.      Notices.

All notices, requests, and demands under the Plan to be effective must be in writing and, unless otherwise expressly provided in the Plan, will be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

To the Debtor:  Samsonite Company Stores LLC,  575 West Street, Suite 110, Mansfield, Massachusetts 02048, attention:  John Livingston, with a copy to (i) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019-6064, attention:  Jeffrey D. Saferstein; and (ii) Young, Conaway, Stargatt & Taylor LLP, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, Delaware 19801, attention:  Pauline K. Morgan.

9.      Plan Supplement.

Forms of the documents that the Debtor determines to be necessary or appropriate to the implementation and/or confirmation of the Plan will be contained in the Plan Supplement, which will be filed with the Clerk of the Court no later than ten (10) business days prior to the Confirmation Hearing; *provided*, *however*, that the Debtor may amend any of the Plan Supplement Documents through and including the Effective Date in a manner consistent with the Plan and with the consent of any non-Debtor third parties

DB02:8684588.1                    068471.1001

to the relevant document. The Plan Supplement may be inspected in the office of the Clerk of the Court during normal court hours and will be available online at Epiq Systems, Inc.'s website at the Debtor's dedicated web page on http://chapter11.epiqsystems.com/ses.

10. <u>Conflict</u>.

The terms of the Plan will govern in the event of any inconsistency with the summary of the Plan set forth in this Disclosure Statement. The terms of the Confirmation Order will govern in the event of any inconsistency with the Plan or the summary of the Plan set forth herein.

11. <u>Setoff by the United States</u>.

The valid setoff rights, if any, of the United States of America will be unaffected by the Plan or confirmation thereof.

## IV.
## CONFIRMATION OF THE PLAN

The following is a brief summary of the provisions of the Bankruptcy Code respecting acceptance and Confirmation of a plan of reorganization. Holders of Claims and Equity Interests are encouraged to review the relevant provisions of the Bankruptcy Code and/or to consult their own attorneys.

A. <u>Confirmation Hearing</u>.

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing on confirmation of a plan. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement of the adjourned date made at the Confirmation Hearing or any subsequent adjourned Confirmation Hearing.

42

Section 1128(b) of the Bankruptcy Code provides that any party-in-interest may object to confirmation of a plan. The Bankruptcy Court will schedule a Confirmation Hearing to consider whether the Plan satisfies the various requirements of the Bankruptcy Code. The Debtor is seeking an Order scheduling the Confirmation Hearing, at which the Debtor will seek approval of this Disclosure Statement and Confirmation of the Plan pursuant to sections 1125, 1128 and 1129 of the Bankruptcy Code. Notice of the Confirmation Hearing (the "Confirmation Hearing Notice") will be provided to all Holders of Claims and Equity Interests or their representatives as required by Bankruptcy Rule 2002. Objections to confirmation must be filed with the Bankruptcy Court by the date designated in the Confirmation Hearing Notice and are governed by Bankruptcy Rules 3020(b) and 9014, as well as the local rules of the Court. UNLESS AN OBJECTION TO CONFIRMATION OF THE PLAN IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THE CONFIRMATION HEARING NOTICE, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.

At the Confirmation Hearing, the Bankruptcy Court will determine whether the Plan satisfies the provisions of section 1129 of the Bankruptcy Code. Among the requirements for Confirmation are that the Plan (i) is accepted by all impaired Classes of Claims and Equity Interests or, if rejected by an impaired Class, "does not discriminate unfairly" and is "fair and equitable" as to such Class, (ii) is feasible, and (iii) is in the "best interests" of Holders of Claims and Equity Interests that are impaired under the Plan.

**B. Plan Meets the Requirements for Confirmation**

1. **Class Acceptance of the Plan.**

The Plan provides that all Classes of Claims and Equity Interests are unimpaired and thus are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. If the Plan is confirmed, the Plan will be binding with respect to all Holders of Claims and Equity Interests of each Class.

2.     Best Interests of Creditors – Liquidation Analysis.

The "best interests of creditors" requires that, in order to be confirmed, a plan must be in the best interests of each holder of a claim or equity interest in an impaired class that has not voted to accept the plan. Accordingly, if an impaired class does not unanimously accept a plan, the best interests test requires that the bankruptcy court find that the plan provides to each non-consenting holder in such impaired class a recovery on account of such holder's claim or equity interest that has a value at least equal to the value of the distribution that each such holder would receive in a liquidation under chapter 7 of the Bankruptcy Code.

As the Plan provides that all Classes of Claims and Equity Interests are unimpaired, the best interests test is not applicable to the Plan.

3.     Feasibility of the Plan.

The Debtor believes that confirmation of the Plan is not likely to be followed by a liquidation of the Reorganized Debtor or a need for a further financial reorganization of the Reorganized Debtor. Upon consummation of the Plan and the global restructuring of Samsonite Corporation, the Reorganized Debtor will have access to sufficient cash to fund distributions under the Plan and to support and meet the Reorganized Debtor's ongoing financial needs. The Debtor intends to include financial projections for the Reorganized Debtor as part of the Plan Supplement. The financial

44

projections will show that the Reorganized Debtor will be able to make all payments required by the Plan and will be financially viable after confirmation of the Plan.

C. <u>Alternatives to Confirmation and Consummation of the Plan</u>.

1. <u>Alternative Plans of Reorganization</u>.

If the Plan is not confirmed, the Debtor (or, if the exclusive period in which to file a plan of reorganization has expired or is terminated by the Bankruptcy Court, any other party in interest) could attempt to formulate a different plan of reorganization. Such a plan might involve either a reorganization or continuation of the Debtor's business or an orderly liquidation of its assets.

The Debtor believes that the Plan is a significantly more attractive alternative than those alternatives, because it provides for payment in full to all Holders of all Claims and Equity Interests. Moreover, the Debtor believes that the Plan could, among other things, minimize disputes during the reorganization of the Debtor, significantly shorten the time required to accomplish the reorganization, reduce the expenses of the Chapter 11 Case, minimize disruption to the Debtor's business that would result from a protracted and contested bankruptcy case and ultimately result in a larger distribution to Creditors and Equity Interest Holders than would other types of reorganizations under chapter 11 of the Bankruptcy Code or a liquidation under chapter 7 or chapter 11 of the Bankruptcy Code.

2. <u>Dismissal of the Debtor's Chapter 11 Case</u>.

Dismissal of the Chapter 11 Case would have the effect of restoring (or attempting to restore) all parties to the *status quo ante*. Upon dismissal of the Chapter 11 Case, the Debtor would lose the protections afforded by the Bankruptcy Code, thereby requiring, at the very least, an extensive and time-consuming process of negotiating with

its creditors, and possibly costly and protracted litigation. Dismissal would permit unpaid unsecured creditors to seek to obtain and enforce judgments against the Debtor. The Debtor believes that these actions would seriously undermine its ability to finance its operations and could ultimately lead to the Debtor's liquidation under either chapter 7 or chapter 11 of the Bankruptcy Code. Therefore, the Debtor believes that dismissal of the Chapter 11 Case is not a viable alternative to the Plan.

3. <u>Liquidation Under Chapter 7 or Chapter 11</u>.

If the Plan is not confirmed, the Chapter 11 Case may be converted to a case under chapter 7 of the Bankruptcy Code, pursuant to which a trustee would be elected or appointed to liquidate the Debtor's assets for distribution to creditors and equity interest holders in accordance with the priorities established by the Bankruptcy Code. The Debtor believes that a liquidation under chapter 7 would result in smaller distributions to Holders of Claims (and, as to certain Classes, possibly no distribution at all) as compared with the payments in full to all Classes provided for in the Plan, because of, among other things, (i) the failure to realize the greater going-concern value of the Debtor's assets and the "forced sale" atmosphere that would prevail, (ii) the administrative expenses involved in the appointment of a trustee and professional advisors to such trustee, and (iii) expenses and Claims, some of which would be entitled to priority, which would be generated during the liquidation.

In a liquidation under chapter 11, the Debtor's assets could be sold in an orderly fashion over a more extended period of time than in a liquidation under chapter 7, potentially resulting in somewhat greater recoveries. However, the Debtor believes that a

DB02:8684588.1 068471.1001

liquidation under chapter 11 would still not realize the full going-concern value of the Debtor's assets.

# V.
# RISK FACTORS

A. Business Related Risks.

1. Projected Financial Information. The Financial Projections and Valuation Discussion annexed as Exhibit B to this Disclosure Statement are dependent upon the successful implementation of the business plan and the validity of the other assumptions contained therein. These projections reflect numerous assumptions, including Confirmation and Consummation of the Plan in accordance with its terms, consummation of Samsonite Corporation's broader global restructuring, the anticipated future performance of the Debtor, industry performance, certain assumptions with respect to competitors of the Debtor, general business and economic conditions, and other matters, many of which are beyond the control of the Debtor. In addition, unanticipated events and circumstances occurring subsequent to the preparation of the projections may affect the actual financial results of the Debtor. Although the Debtor believes that the projections are reasonably attainable, variations between the actual financial results and those projected may occur and be material.

B. Certain Bankruptcy Related Considerations.

1. General. The filing of a Chapter 11 petition by the Debtor and the publicity attendant thereto may adversely affect the Debtor's business. The Debtor believes it will have an expeditious emergence from Chapter 11. There can be no assurance, however, that such emergence will occur. The filing of the Chapter 11 Case

and/or any prolonged stay in chapter 11 could have a material adverse effect on the Debtor's ability to reorganize.

2.  Risk of Non-Confirmation of the Plan. Despite the Debtor's intent to proceed as quickly as possible toward confirmation of the Plan, there is always a risk that the Chapter 11 Case could evolve into a lengthy and contested matter, with unpredictable results. The Debtor believes that this risk is significantly reduced in this case, as no Holders of Claims or Equity Interests are impaired under the Plan.

Despite the fact that all Holders of Claims and Equity Interests are conclusively presumed to have accepted the Plan, the Plan still may not be confirmed by the Bankruptcy Court, which sits as a court of equity and may exercise substantial discretion. The Bankruptcy Court could decline to confirm the Plan if it were to find that any statutory conditions to confirmation had not been met. Although the Debtor believes that the Plan meets the requirements for confirmation, there can be no assurance that the Bankruptcy Court would reach the same conclusion.

If the Plan is not confirmed in a timely manner, it is not certain what distribution Holders of Claims and Equity Interests would ultimately receive in respect of their Claims and Equity Interests. If an alternative plan of reorganization could not be agreed to, it is possible that the Debtor would have to liquidate its assets, in which case it is very likely that Holders of Claims and Equity Interests would receive less than the payment in full on account of existing obligations that they would have received pursuant to the Plan. Moreover, if confirmation of the Plan is significantly delayed it could result in an extended chapter 11 proceeding, during which time the Debtor could experience

deterioration in its relationships with its trade vendors and major customers, causing a material adverse effect to its business and results of operations.

## VI.
## CERTAIN UNITED STATES FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

CIRCULAR 230 DISCLOSURE: INTERESTED PARTIES ARE HEREBY NOTIFIED THAT: (A) ANY DISCUSSION OF FEDERAL TAX ISSUES IN THIS DOCUMENT IS NOT INTENDED OR WRITTEN TO BE RELIED UPON, AND CANNOT BE RELIED UPON BY ANY PERSON FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED UNDER THE INTERNAL REVENUE CODE; (B) SUCH DISCUSSION IS WRITTEN IN CONNECTION WITH THE DISCLOSURE OF MATTERS ADDRESSED HEREIN; AND (C) INTERESTED PARTIES SHOULD SEEK ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.

The following is a discussion of certain significant federal income tax considerations of the Plan under the Tax Code. This discussion is limited to certain tax considerations for the Holders of Claims and Equity Interests who are United States Persons (as defined in the Tax Code). This general description does not discuss all aspects of U.S. federal income taxation that may be relevant to any Person in light of such Person's personal investment circumstances, or the extent to which such person may be subject to special treatment under the federal income tax laws (for example, (i) banks, regulated investment companies, real estate investment trusts, insurance companies, employee stock ownership plans, brokers, dealers in securities or currencies, subchapter S corporations, entities treated as partnerships for U.S. federal income tax purposes, and tax exempt organizations, (ii) Persons who hold Claims or interests as part of a straddle, hedge, conversion transaction or other integrated investment, (iii) Persons whose functional currency is not the U.S. dollar, (iv) Persons that use a mark to market method of accounting, and (v) Persons that are not U.S. Persons under the Tax Code). In addition, this discussion does not address state, local or non-U.S. taxes. Furthermore,

estate and gift tax issues are not addressed herein. This discussion is based upon laws, regulations, rulings and decisions now in effect and upon proposed regulations, all of which are subject to change (possibly with retroactive effect) by legislation, administrative action or judicial decision. No opinion of counsel has been sought or obtained with respect to any federal income tax consequences of the Plan and no tax opinion is given by this Disclosure Statement. No rulings or determination letters from the IRS or any other taxing authorities have been obtained or sought with respect to the Plan, and the description below is not binding upon the IRS or such other taxing authorities. With respect to some of the federal income tax consequences discussed herein, the tax law is unclear. Accordingly, it is possible that the IRS will disagree with the description below of the tax consequences, and there can be no certainty that the IRS would not prevail in any challenge it may decide to make in that regard.

**FOR THE FOREGOING REASONS, ALL INTERESTED PARTIES ARE URGED TO CONSULT WITH THEIR OWN TAX ADVISORS AS TO THE SPECIFIC TAX CONSEQUENCES (FOREIGN, FEDERAL, STATE AND LOCAL) OF THE PLAN TO THEM. THE DEBTOR IS NOT MAKING ANY REPRESENTATIONS REGARDING THE PARTICULAR TAX CONSEQUENCES OF THE CONFIRMATION AND CONSUMMATION OF THE PLAN AS TO ANY SPECIFIC HOLDER OF A CLAIM AGAINST IT, NOR IS THE DEBTOR RENDERING ANY FORM OF LEGAL OPINION AS TO SUCH TAX CONSEQUENCES.**

A.    Tax Consequences to Holders of Claims and Equity Interests.

Holders of Claims and Equity Interests will either be paid in full or their prepetition legal, contractual and equitable rights will be left unaltered after consummation of the Plan. A Holder whose Claim or Equity Interest is paid may have some income or loss equal to the amount by which the cash it receives is greater or less than its tax basis for the Claim or Equity Interest. A Holder of a Claim that is unaffected by the Plan will realize neither gain nor loss as a result of consummation of the Plan.

## VII.
## CONCLUSION

**THE DEBTOR BELIEVES THAT THE PLAN PROVIDES THE BEST AVAILABLE RECOVERY TO ITS STAKEHOLDERS AND SHOULD BE CONFIRMED.**

Dated: September 2, 2009

Samsonite Company Stores, LLC

By: _____

    Name:  Donald E. Walden
    Title:   Assistant Treasurer

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
Jeffrey D. Saferstein (JS/5339)
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

YOUNG CONAWAY STARGATT &
TAYLOR LLP
Pauline K. Morgan (No. 3650)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

DB02:8684588.1

068471.1001

# EXHIBIT A

## Debtor's Plan of Reorganization

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀Chapter 11
SAMSONITE COMPANY STORES, LLC,⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀Case No. 09-13162 (⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀Debtor.[1]⠀⠀)


## DEBTOR'S PLAN OF REORGANIZATION UNDER
## CHAPTER 11 OF THE BANKRUPTCY CODE


PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
Jeffrey D. Saferstein (JS/5339)
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

YOUNG CONAWAY STARGATT &
TAYLOR LLP
Pauline K. Morgan (No. 3650)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253


Proposed Counsel for the Debtor and Debtor
in Possession


Dated: September 2, 2009

---

[1]⠀⠀The last four digits of the Debtor's tax identification number are (6266) and its headquarters is located
at 575 West Street, Suite 110, Mansfield, MA 02048.

# TABLE OF CONTENTS

PAGE

ARTICLE I DEFINITIONS ................................................................................ 1
    1.1    Defined Terms ............................................................................... 1
    1.2    Other Terms ................................................................................. 10

ARTICLE II TREATMENT OF ADMINISTRATIVE EXPENSES AND
           PRIORITY TAX CLAIMS ................................................................ 11
    2.1    Administrative Expenses ............................................................. 11
    2.2    Priority Tax Claims ..................................................................... 11
    2.3    Fee Claims .................................................................................. 11

ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS AND
           EQUITY INTERESTS .................................................................... 12
    3.1    Classification ............................................................................... 12
    3.2    Treatment of Allowed Claims ..................................................... 12
    3.3    Treatment of Equity Interests. .................................................... 14

ARTICLE IV VOTING ON THE PLAN ......................................................... 14
    4.1    No Classes are Entitled to Vote on the Plan ............................... 14

ARTICLE V IMPLEMENTATION OF THE PLAN ......................................... 14
    5.1    Intercompany Claims ................................................................... 14
    5.2    Corporate Governance and Management of the Reorganized
          Debtor ......................................................................................... 14
    5.3    Powers of Officers ...................................................................... 15
    5.4    Plan Funding ............................................................................... 15

ARTICLE VI EFFECT OF CONFIRMATION OF THE PLAN ...................... 16
    6.1    Continued Corporate Existence ................................................... 16
    6.2    Dissolution of Creditors' Committee .......................................... 16
    6.3    Vesting of Property ...................................................................... 17

ARTICLE VII DISTRIBUTIONS ................................................................... 17
    7.1    Distributions Generally ............................................................... 17
    7.2    Manner of Payment under the Plan ............................................. 17
    7.3    Surrender of Collateral, Surrender and Cancellation of
          Instruments ................................................................................. 17
    7.4    Setoffs ......................................................................................... 18
    7.5    Undeliverable or Returned Distributions .................................... 18
    7.6    Interest and Penalties on Claims ................................................. 19

ARTICLE VIII PROVISIONS FOR TREATMENT OF DISPUTED
        ADMINISTRATIVE EXPENSES AND DISPUTED CLAIMS ........... 19

  8.1    Reserve for Disputed Administrative Expenses and Disputed
          Claims and Bonding Requirements ....................................................... 19
  8.2    Disposition of Distribution Reserve ...................................................... 20
  8.3    Resolution of Disputed Claims ............................................................. 20

ARTICLE IX EXECUTORY CONTRACTS AND UNEXPIRED LEASES ................ 20

  9.1    Assumption of Executory Contracts and Unexpired Leases ................. 20
  9.2    Rejection of Executory Contracts and Unexpired Leases ..................... 22
  9.3    Rejection Damages Bar Date for Rejections Pursuant to Plan .............. 23
  9.4    Compensation and Benefit Programs .................................................... 23

ARTICLE X RELEASES AND INJUNCTION ....................................................... 24

  10.1   Discharge of the Debtor ........................................................................ 24
  10.2   Injunction ............................................................................................. 25
  10.3   Preservation of Causes of Action ......................................................... 25
  10.4   Administrative Claims Incurred After the Confirmation Date .............. 26
  10.5   Mutual Releases ................................................................................... 26
  10.6   Exculpation .......................................................................................... 27
  10.7   Term of Bankruptcy Injunction or Stays .............................................. 29
  10.8   Preservation of Insurance ..................................................................... 29
  10.9   Officers' and Directors' Indemnification Rights and Insurance ........... 30
  10.10  Debtor's Release .................................................................................. 30

ARTICLE XI CONDITIONS PRECEDENT TO CONFIRMATION AND
        EFFECTIVENESS OF THE PLAN ........................................................ 31

  11.1   Conditions Precedent to the Effective Date........................................... 31
  11.2   Waiver of Condition ............................................................................. 31

ARTICLE XII RETENTION OF JURISDICTION ........................................... 32

  12.1   Retention of Jurisdiction ....................................................................... 32

ARTICLE XIII MISCELLANEOUS PROVISIONS ....................................... 34

  13.1   Payment of Statutory Fees .................................................................... 34
  13.2   Bar Date for Professional Fee and Expense Claims .............................. 34
  13.3   Modification of the Plan ....................................................................... 34
  13.4   Revocation of Plan ............................................................................... 35
  13.5   Headings .............................................................................................. 35
  13.6   Binding Effect ...................................................................................... 35
  13.7   Notices ................................................................................................. 35
  13.8   Governing Law ..................................................................................... 35
  13.9   Filing of Additional Documents ........................................................... 36
  13.10  Further Proceedings .............................................................................. 36
  13.11  Withholding and Reporting Requirements ............................................ 36

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) |
| | )    Chapter 11 |
| SAMSONITE COMPANY STORES, LLC, | ) |
| | )    Case No. 09-_____(___) |
| | ) |
| Debtor. | ) |

## DEBTOR'S PLAN OF REORGANIZATION UNDER
## CHAPTER 11 OF THE BANKRUPTCY CODE

Samsonite Company Stores, LLC, as debtor and debtor-in-possession,

proposes the following plan pursuant to section 1121(a) of the Bankruptcy Code.

### ARTICLE I
### DEFINITIONS

1.1    <u>Defined Terms</u>. As used herein, the following terms shall have the

meanings specified below (such meanings to be equally applicable to both the singular

and plural and masculine and feminine forms of the terms defined).

"*Administrative Expense*" means (a) any cost or expense of

administration allowed under section 503(b) of the Bankruptcy Code, including, without

limitation, (i) Claims arising after the Petition Date and on or before the Effective Date

for actual and necessary expenses of preserving the estate of the Debtor (including,

without limitation, Claims for Taxes) and (ii) all compensation and reimbursement of

expenses to the extent allowed by the Bankruptcy Court under sections 330 or 503 of the

Bankruptcy Code and (b) any fees and charges assessed against the estate of the Debtor

under chapter 123 of Title 28, United States Code, 28 U.S.C. §§ 1911-1930.

"*Affiliate*" means any Person that directly or indirectly, through one or more intermediaries, controls or is controlled by or is under common control with the Person specified. For purposes of this definition, control of a Person means the power, direct or indirect, to direct or cause the direction or the management and policies of such Person, whether by contact or otherwise.

"*Allowed*" means, with reference to any Claim, (a) any Claim against the Debtor which has been listed by the Debtor in its Schedules, as such Schedules may be amended by the Debtor from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent, and with respect to which no contrary proof of claim has been filed, (b) any Claim specifically allowed under the Plan, (c) any Claim which is not Disputed or (d) any Claim the amount or existence of which, if Disputed, (i) has been determined by a Final Order of a court of competent jurisdiction other than the Court or (ii) has been allowed by Final Order of the Court.

"*Bank Guaranty Secured Claim*" means a Claim that is secured by a valid, perfected and enforceable lien on property in which the Debtor's estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim Holder's interest in the estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined by a Final Order of the Bankruptcy Court, and that arises from that certain Amended and Restated Senior Facilities Agreement between Vespucci Finance Sarl, as Parent, the Companies named therein as Borrowers and Guarantors, and the Royal Bank of Scotland plc as Mandated

Lead Arranger, Facility Agent and the Security Agent (as may be amended, modified or restated from time to time), originally dated as of October 23, 2007.

"*Bankruptcy Code*" means Title 11 of the United States Code, as now in effect or hereafter amended.

"*Bankruptcy Court*" means the United States District Court for the District of Delaware having jurisdiction over the Chapter 11 Case and, to the extent of any reference made pursuant to section 157 of Title 28 of the United States Code, the unit of such District Court pursuant to section 151 of Title 28 of the United States Code.

"*Bankruptcy Rules*" means (a) the Federal Rules of Bankruptcy Procedure promulgated under 28 U.S.C. § 2075 and (b) the general and local rules of the Bankruptcy Court, as now in effect or hereafter amended.

"*Business Day*" means any day other than a Saturday, Sunday or any other day on which banks located in the State of New York are authorized or obligated to close.

"*Cash*" means cash and cash equivalents.

"*Causes of Action*" means all actions, causes of action, Liabilities, suits, debts, Indebtedness, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, trespasses, damages, rights, executions, claims, Claims, objections to Claims, judgments and demands whatsoever, whether known or unknown, choate or inchoate, suspected or unsuspected in law or equity or otherwise.

"*Chapter 11 Case*" means the case under chapter 11 of the Bankruptcy Code commenced on the Petition Date by the Debtor.

"*Claim*" means a claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtor.

"*Class*" means a category of Claims or Equity Interests, as described in Article III hereof.

"*Confirmation*" means the entry, within the meaning of Bankruptcy Rules 5003 and 9021, of the Confirmation Order by the Bankruptcy Court on its docket.

"*Confirmation Date*" means the date upon which Confirmation occurs.

"*Confirmation Hearing*" means the hearing held by the Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

"*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to the provisions of the Bankruptcy Code.

"*Contract*" means any agreement, lease, license, evidence of Indebtedness, mortgage, indenture, security agreement or other contract or instrument.

"*Creditor*" means any Person holding a Claim against the Debtor that arose on or before the Petition Date.

"*Debtor*" means Samsonite Company Stores, LLC.

"*Debtor in Possession*" means the Debtor, as debtor in possession in the Chapter 11 Case.

"*Disputed*" means, with respect to Claims, any such Claim

(a) that is listed on the Schedules as unliquidated, disputed or contingent; or

(b) as to which the Debtor or any other party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules or which is otherwise disputed by a Debtor in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order.

"*Distribution Reserve*" has the meaning set forth in Section 8.1 of the Plan.

"*Effective Date*" means the date (a) which is on or after the Confirmation Date, or, if such date is not a Business Day, the next succeeding Business Day; provided, however, that if, as of such date, all conditions to the occurrence of the Effective Date set forth in Section 10.1 of the Plan have not been satisfied (or waived), then the first Business Day on which all such conditions have been satisfied (or waived) and (b) on which no stay of the Confirmation Order is in effect.

"*Equity Interest or Interest*" means any share of common stock or other instrument evidencing an ownership interest in the Debtor, whether or not transferable, and any option, warrant, or right, contractual or otherwise, to acquire, sell or subscribe for any such interest.

"*Estimated Amount*" has the meaning set forth in Section 8.1 of the Plan.

"*Executory Contracts and Unexpired Leases*" means all executory contracts and unexpired leases to which the Debtor is a party.

"*Fee Claims*" means an Administrative Claim under section 330(a), 331 or 503 of the Bankruptcy Code for compensation of a Professional or other Person for services rendered or expenses incurred in the Chapter 11 Case on or prior to the Confirmation Date (including the reasonable non-legal expenses of the individual members of the Creditors' Committee (if any) incurred in the discharge of their duties as members of the Creditors' Committee).

"*Final Order*" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter, which has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek reconsideration or certiorari has expired and no appeal or petition for reconsideration or certiorari has been timely taken, or as to which any appeal that has been taken or any petition for reconsideration or certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which reconsideration or certiorari was sought.

"*Global Restructuring*" means the fully consensual out-of-court global restructuring of Samsonite LLC and its affiliates and subsidiaries and all agreements, including the Restructuring Implementation Deed dated 2 September 2009, the Guarantee dated 28 August 2009, the Amendment and Restatement relating to the Senior Facilities Agreement originally dated 23 October 2007 and all related Finance Documents (as defined in the Senior Facilities Agreement originally dated 23 October 2007), and transactions entered into in connection therewith.

"*Government*" has the meaning set forth in Section 10.6(b) of the Plan.

"*Holder*" means a holder of a Claim or Equity Interest, as applicable.

"*Indebtedness*" of any Person means all obligations of such Person (i) for borrowed money or (ii) in the nature of a guarantee of the obligations for borrowed money of any other Person.

"*Insured Claim*" means any Claim arising from an incident or occurrence alleged to have occurred prior to the Effective Date that is covered under an insurance policy applicable to the Debtor or its business.

"*Intercompany Claims*" means any Claim held by any affiliate or subsidiary of the Debtor against the Debtor, including, without limitation, (a) any account reflecting intercompany book entries by such affiliate or subsidiary with respect to the Debtor, (b) any Claim not reflected in book entries that is held by such affiliate or subsidiary, and (c) any derivative Claim asserted or assertable by or on behalf of such affiliate or subsidiary against the Debtor.

"*Liabilities*" means all Indebtedness, obligations, and other liabilities of a Person (whether known or unknown, whether absolute, accrued, contingent, fixed or otherwise, and whether due or to become due).

"*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

"*Other Secured Claim*" means a Claim, other than a Bank Guaranty Secured Claim, that is secured by a valid, perfected and enforceable lien on property in which the Debtor's estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim Holder's

interest in the estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined by a Final Order of the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code.

"*Person*" means any natural person, corporation, general partnership, limited partnership, proprietorship, other business organization, trust, union, estate, entity, association, governmental unit or regulatory authority.

"*Petition Date*" means the date on which the Debtor filed its petition for relief commencing the Chapter 11 Case.

"*Plan*" means this chapter 11 plan (including all exhibits and schedules annexed hereto), if any, either in its present form or as it may be altered, amended, modified or supplemented from time to time in accordance with this chapter 11 plan, the Bankruptcy Code and the Bankruptcy Rules.

"*Plan Supplement*" means the supplement to the Plan containing the Plan Supplement Documents.

"*Plan Supplement Documents*" means the documents to be included in the Plan Supplement, to be filed no later than ten (10) business days prior to the Confirmation Hearing.

"*Priority Claim*" means any Claim against the Debtor, accorded priority under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Expense.

"*Priority Tax Claim*" means any Claim accorded priority under section 507(a)(8) of the Bankruptcy Code.

"*Professionals*" means (a) all professionals employed in the Chapter 11 Case pursuant to sections 327 or 1103 of the Bankruptcy Code and (b) all professionals seeking compensation or reimbursement of expenses pursuant to section 503(b)(4) of the Bankruptcy Code.

"*Pro Rata*" means, as the context may dictate, the ratio of the amount of an Allowed Claim in a particular Class to the aggregate amount of all Allowed and Disputed Claims in such Class.

"*Reinstated*" means (a) leaving unaltered the legal, equitable and contractual rights to which a Claim entitles the Holder of such Claim so as to leave such Claim unimpaired in accordance with section 1124 of the Bankruptcy Code, or (b) notwithstanding any contractual provision or applicable law that entitles the Holder of such Claim to demand or receive accelerated payment of such Claim after the occurrence of a default, (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code, (ii) reinstating the maturity of such Claim as such maturity existed before such default, (iii) compensating the holder of a Claim for any damages incurred as a result of any reasonable reliance by such Holder of a Claim on such contractual provision or such applicable law, and (iv) not otherwise altering the legal, equitable, or contractual rights to which such Claim entitles the Holder of such Claim; *provided, however*, that any contractual right that does not pertain to the payment when due of principal and interest on the obligation on which such Claim is based, including, but not limited to, financial covenant ratios, negative pledge covenants, covenants or restrictions on merger or consolidation, and affirmative covenants regarding corporate existence, prohibiting

certain transactions, change of control or actions contemplated by this Plan, or conditioning such transactions or actions on certain factors, shall not be required to be cured or reinstated to achieve reinstatement.

"*Reorganized Debtor*" means the successor to the Debtor on and after the Effective Date.

"*Schedules*" means the schedules of assets and liabilities, schedules of executory contracts and the statement of financial affairs filed by the Debtor as required by section 521 of the Bankruptcy Code, the Official Bankruptcy Forms and the Bankruptcy Rules, and any and all amendments thereto.

"*Secured Claim*" means a Bank Guaranty Secured Claim or an Other Secured Claim.

"*Taxes*" means any federal, state, county or local taxes, charges, fees, levies, other assessments, or withholding taxes or charges imposed by any governmental unit, and includes any interest and penalties (civil or criminal) on or additions to any such taxes and any expenses incurred in connection with the determination, settlement or litigation of any tax liability.

"*Unsecured Claim*" means any Claim that is not a Secured Claim, an Administrative Expense, a Priority Tax Claim or a Priority Claim.

    1.2    Other Terms. The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection or clause contained in the Plan. A term used herein and not defined herein shall have the meaning ascribed to that term, if any, in the Bankruptcy Code.

# ARTICLE II
# TREATMENT OF ADMINISTRATIVE
# EXPENSES AND PRIORITY TAX CLAIMS

2.1     <u>Administrative Expenses</u>.  Subject to the provisions of sections 330(a) and 331 of the Bankruptcy Code, as applicable, each Holder of an Allowed Claim for an Administrative Expense shall receive in full and final satisfaction of such Claim, (a) Cash in the full amount of such Allowed Claim, without interest, or (b) such amount at such other date and upon such other terms as may be agreed upon in writing by such Holder and the Debtor or otherwise approved by Final Order of the Bankruptcy Court.

2.2     <u>Priority Tax Claims</u>.  Each Holder of an Allowed Priority Tax Claim shall receive in full and final satisfaction of such Claim, Cash (a) in the full amount of such Allowed Priority Tax Claim, without interest, on or as soon as practicable after the later of (i) the Effective Date, (ii) the date on which such Priority Tax Claim becomes Allowed, and (iii) the date on which the Holder of such Allowed Priority Tax Claim and the Debtor otherwise agree in writing, or, at the Debtor's option, (b) within such other period and upon such other terms as provided in section 1129(a)(9)(C) of the Bankruptcy Code.

2.3     <u>Fee Claims</u>.  All requests for compensation or reimbursement of Fee Claims pursuant to sections 327, 328, 330, 331, 503 or 1103 of the Bankruptcy Code for services rendered prior to the Confirmation Date shall be filed and served on the Reorganized Debtor and its counsel, the United States Trustee, counsel to the Creditors' Committee (if any), and such other entities who are designated by the Bankruptcy Rules, the Confirmation Order or any other order(s) of the Court, no later than sixty (60) days after the Confirmation Date.  Holders of Fee Claims that are required to file and serve applications for final allowance of their Fee Claims and that do not file and serve such

applications by the required deadline shall be forever barred from asserting such Fee

Claims against the Debtor, the Reorganized Debtor or its respective properties, and such

Fee Claims shall be deemed discharged as of the Effective Date. Objections to any Fee

Claims must be filed and served on the Reorganized Debtor and its counsel and the

requesting party no later than thirty (30) days (or such other period as may be allowed by

order of the Court) after the date on which an application for final allowance of such Fee

Claims was filed and served.

## ARTICLE III
## CLASSIFICATION AND TREATMENT OF
## CLAIMS AND EQUITY INTERESTS

3.1 <u>Classification</u>. Claims other than Claims for Administrative

Expenses and Priority Tax Claims are classified for all purposes as follows:

> Class 1: Priority Claims
> Class 2: Secured Claims
> Class 3: Unsecured Claims
> Class 4: Equity Interests

3.2 <u>Treatment of Allowed Claims</u>.

(a) *Class 1: Priority Claims*. On or as soon as practicable after the

later of (i) the Effective Date, (ii) the date such Priority Claim becomes an Allowed

Claim, and (iii) the date on which the Holder of such Allowed Priority Claim and the

Debtor otherwise agree in writing, in full and final satisfaction of such Priority Claim, the

legal, equitable, and contractual rights to which such Allowed Priority Claim entitles the

Holder of such Allowed Priority Claim shall be left unaltered. At the Debtor's option,

the Debtor may pay any Allowed Priority Claims in full, in Cash. The treatment

provided in this Section 3.2(a) will result in the payment of any Allowed Priority Claim

in Cash by the Debtor in an amount equal to such Allowed Priority Claim on the date

provided in this Section 3.2(a). Class 1 is unimpaired under the Plan under section 1124(1) of the Bankruptcy Code, and the Holders of Allowed Class 1 Claims are deemed to have accepted the Plan and are, therefore, not entitled to vote to accept or reject the Plan.

(b)     *Class 2: Secured Claims.*  On or as soon as practicable after the Effective Date, in full and final satisfaction of such Claims, the legal, equitable, and contractual rights to which such Allowed Secured Claims in Class 2 entitles the Holder of such Claims shall be left unaltered.  Class 2 is unimpaired under the Plan and is deemed to have accepted the Plan under section 1124(1) of the Bankruptcy Code.  The Holders of Allowed Secured Claims in Class 2 are deemed to have accepted the Plan and are, therefore, not entitled to vote to accept or reject the Plan.

(c)     *Class 3: Unsecured Claims.*  On or as soon as practicable after the later of (i) the Effective Date, (ii) the date an Unsecured Claim in Class 3 becomes an Allowed Claim, and (iii) the date on which the Holder of such Allowed Unsecured Claim in Class 3 and the Debtor otherwise agree in writing, in full and final satisfaction of such Claim, the legal, equitable, and contractual rights to which such Allowed Unsecured Claim in Class 3 entitles the Holder of such Allowed Unsecured Claim shall be left unaltered.  At the Debtor's option, the Debtor may pay any Allowed Unsecured Claim in full, in Cash.  The treatment provided in this Section 3.2(c) will result in the payment by the Debtor of any Allowed Unsecured Claim in Class 3 in Cash in an amount equal to such Allowed Unsecured Claim in such Class on the date provided in this Section 3.2(c). Class 3 is unimpaired under the Plan and is deemed to have accepted the Plan under section 1124(1) of the Bankruptcy Code.  The Holders of Allowed Unsecured Claims in

Class 3 are deemed to have accepted the Plan and are, therefore, not entitled to vote to accept or reject the Plan.

   3.3   Treatment of Equity Interests.

   (a)   *Class 4: Equity Interests.* The Holders of Class 4 Equity Interests shall have such Equity Interests Reinstated on the Effective Date. Class 4 is unimpaired under the Plan and is deemed to have accepted the Plan under section 1124(l) of the Bankruptcy Code. The Holders of Equity Interests in Class 4 are deemed to have accepted the Plan and are, therefore, not entitled to vote to accept or reject the Plan.

### ARTICLE IV
### VOTING ON THE PLAN

   4.1   No Classes are Entitled to Vote on the Plan. Classes 1, 2, 3 and 4 are unimpaired under the Plan and, pursuant to section 1126(f) of the Bankruptcy Code, are conclusively presumed to have accepted the Plan.

### ARTICLE V
### IMPLEMENTATION OF THE PLAN

   5.1   Intercompany Claims. Notwithstanding anything to the contrary herein, Intercompany Claims will be adjusted, continued or discharged to the extent determined appropriate by the Debtor or the Reorganized Debtor, in their sole discretion. Any such transaction may be effected on or subsequent to the Effective Date without any further action by the Debtor, the Debtor in Possession, or the Reorganized Debtor.

   5.2   Corporate Governance and Management of the Reorganized Debtor

   (a)   Sole Member. Samsonite LLC will be the Reorganized Debtor's sole member.

(b)     <u>Management of the Reorganized Debtor</u>. The officers of the Reorganized Debtor shall be substantially the same as the officers of the Debtor on the Confirmation Date. The Reorganized Debtor's officers shall serve in accordance with any existing employment agreement with the Reorganized Debtor and applicable nonbankruptcy law, as the case may be.

(c)     <u>Amended and Restated Articles of Organization, and</u><br><u>Amended and Restated Limited Liability Company Agreement.</u>

The adoption of the Amended and Restated Articles of Organization and Amended and Restated Limited Liability Company Agreement shall be deemed to have occurred and be effective as of the Effective Date without any further action by the sole member or stockholder (as the case may be) of the Debtor or Reorganized Debtor. The Amended and Restated Articles of Organization will, among other things, contain appropriate provisions prohibiting the issuance of nonvoting equity securities to the extent required by section 1123(a)(6) of the Bankruptcy Code. On or prior to the Effective Date, the Debtor will, if required by applicable state law, file with the Secretary of State of the appropriate jurisdiction the Amended and Restated Articles of Organization.

5.3     <u>Powers of Officers</u>. The officers of the Debtor or the Reorganized Debtor, as the case may be, shall have the power to enter into and to execute any Plan Supplement Document to which the Reorganized Debtor is to be a party and (subject to the approval of the sole member of the Reorganized Debtor) to take such other or further action as they deem reasonable and appropriate to effectuate the terms of the Plan.

5.4     <u>Plan Funding</u>. All cash necessary for the Reorganized Debtor to make payments required by this Plan shall be obtained from (i) the Debtor's existing cash balances and (ii) from the Debtor's parent, Samsonite LLC.

## ARTICLE VI
## EFFECT OF CONFIRMATION OF THE PLAN

6.1     Continued Corporate Existence.  The Debtor, as a Reorganized Debtor, shall continue to exist after the Effective Date with all of the powers of a limited liability company, under the laws of the State of Indiana and without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) under such applicable state law, except as such rights may be limited and conditioned by the Plan and the documents and instruments executed and delivered in connection herewith.  In addition, the Reorganized Debtor may operate its business free of any restrictions imposed by the Bankruptcy Code, the Bankruptcy Rules or by the Court, subject only to the terms and conditions of the Plan as well as the documents and instruments executed and delivered in connection herewith, including without limitation, the documents and instruments included in the Plan Supplement.

6.2     Dissolution of Creditors' Committee.  The Debtor does not anticipate a Creditors' Committee will be formed in the Chapter 11 Case because all unsecured creditors are unimpaired under this Plan.  Notwithstanding this, if a Creditors' Committee is appointed, the Creditors' Committee shall continue in existence until the Effective Date and shall continue to exercise those powers and perform those duties specified in section 1103 of the Bankruptcy Code and shall perform such other duties as it may have been assigned by the Court prior to the Effective Date.  On the Effective Date, the Creditors' Committee shall be dissolved and its members shall be deemed released of all of their duties, responsibilities and obligations in connection with the Chapter 11 Case or this Plan and its implementation, and the retention or employment of the Creditors' Committee's attorneys, financial advisors, and other agents shall terminate

except that the Creditors' Committee shall continue to have standing and a right to be heard with respect to (i) all Fee Claims, (ii) any appeals of the Confirmation Order, (iii) any adversary proceedings pending as of the Effective Date to which it may be a party, and (iv) post-Effective Date modifications to the Plan.

6.3 <u>Vesting of Property</u>. Except as otherwise expressly provided in the Plan, on the Effective Date, or as soon as practicable thereafter, the Reorganized Debtor shall be vested with all of the property of the Debtor's estate free and clear of all Claims, Liens, encumbrances, charges and other interests of creditors and equity security holders.

## ARTICLE VII
## DISTRIBUTIONS

7.1 <u>Distributions Generally</u>. All distributions under the Plan shall be made by the Reorganized Debtor.

7.2 <u>Manner of Payment under the Plan</u>. Payments of Cash by the Reorganized Debtor pursuant to the Plan may be made by check drawn on a domestic bank and shall be made to the address of the Holder of such Allowed Claim as most recently indicated on or prior to the Effective Date on the Debtor's records. At the option of the Reorganized Debtor, payments may be made by wire transfer from a bank.

7.3 <u>Surrender of Collateral, Surrender and Cancellation of Instruments</u>. Notwithstanding any other provision of the Plan, no Holder of a Claim based on an instrument shall be entitled to any distribution under the Plan until such Holder shall have first surrendered or caused to be surrendered to the Reorganized Debtor such instrument or, alternatively, documents reasonably satisfactory to the Reorganized Debtor evidencing (a) succession of title to such Holder, or (b) an affidavit of loss and indemnity with respect to such instrument in a form customarily utilized for such purposes together

with, if the Reorganized Debtor so requests, a bond in form and substance (including as to amount) reasonably satisfactory to the Reorganized Debtor.

7.4 Setoffs. Except as provided under the Plan, the Debtor and/or Reorganized Debtor may, but shall not be required to, set off against any Claim and the payments to be made pursuant to the Plan in respect of such Claim any claims of any nature whatsoever that the Debtor may have against the Claim Holder, but neither the Debtor's failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such claim the Debtor may have against such Claim Holder.

7.5 Undeliverable or Returned Distributions. If any Allowed Claim Holder's distribution is returned to the Reorganized Debtor as undeliverable, no further distributions shall be made to such Claim Holder unless and until the Reorganized Debtor is notified in writing of such Holder's then current address. Upon receipt by the Reorganized Debtor, returned Cash shall not earn any interest or be entitled to any dividends or other accruals of any kind. Any Holder of an Allowed Claim that does not assert a claim pursuant to this Section 7.5 for a returned distribution within one (1) year after the Effective Date shall be forever barred from asserting any such claim against the Debtor or its property, the Reorganized Debtor or its property or other property transferred pursuant to the Plan. In such cases, any Cash held for distribution on account of such Allowed Claim shall re-vest in the Reorganized Debtor to be distributed in accordance with the Plan. Nothing contained in the Plan shall require the Debtor or the Reorganized Debtor to attempt to locate any Holder of an Allowed Claim.

7.6     Interest and Penalties on Claims.  Unless otherwise specifically provided for in this Plan or the Confirmation Order, required by applicable bankruptcy law, or necessary to render a Claim unimpaired, postpetition interest and penalties shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to interest and penalties accruing on or after the Petition Date through the date that such Claim is satisfied in accordance with the terms of this Plan.

## ARTICLE VIII
## PROVISIONS FOR TREATMENT OF DISPUTED ADMINISTRATIVE EXPENSES AND DISPUTED CLAIMS

8.1     Reserve for Disputed Administrative Expenses and Disputed Claims and Bonding Requirements.  On the Effective Date, except as otherwise provided in this Section 8.1, the Reorganized Debtor shall maintain Cash (the "Distribution Reserve") equal to one hundred percent (100%) of (a) the amount that the Holders of Disputed Claims would be entitled to receive under the Plan if such Disputed Claims were Allowed Claims in the full amount asserted by the Holders of such Claims, and (b) an appropriate estimate for Administrative Expenses that have not been Allowed as of the Effective Date.  The Cash so held shall be held by the Reorganized Debtor for the benefit of Holders of such Disputed Claims and Administrative Expenses, pending determination of entitlement thereto.  Upon the request of the Reorganized Debtor at any time, the Bankruptcy Court may estimate and determine by a Final Order the estimated amount (the "Estimated Amount") of any Disputed Claim as of the Effective Date and such Estimated Amount shall be the amount reserved for such Disputed Claim.  Any claimant holding a Disputed Claim so estimated will receive no more than the Estimated Amount from the Distribution Reserve and will not have recourse to the Debtor, the Reorganized

Debtor, or other property transferred pursuant to the Plan should the Allowed Claim of such claimant exceed such Estimated Amount.

8.2　　Disposition of Distribution Reserve.  Cash held in the Distribution Reserve shall be distributed by the Reorganized Debtor to a Holder of a Disputed Claim or Administrative Expense when, and to the extent that, such Disputed Claim or Administrative Expense becomes Allowed, or, as applicable, is estimated as provided in Section 8.1 hereof, pursuant to a Final Order.  Such distribution shall be made to the Holder of such Disputed Claim or Administrative Expense in an amount equal to the amount in which such Disputed Claim or Administrative Expense becomes Allowed, or, if applicable, in an amount equal to the Estimated Amount of such Disputed Claim.  If a Disputed Claim is disallowed or Allowed by Final Order in an amount that is less than the amount of the Disputed Claim, the resulting surplus shall be released from the Distribution Reserve and shall be distributed pursuant to the terms of the Plan.

8.3　　Resolution of Disputed Claims.  Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, the Reorganized Debtor shall have the exclusive right from and after the Effective Date to make, file, prosecute, set off and settle objections to Claims.

## ARTICLE IX
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

9.1　　Assumption of Executory Contracts and Unexpired Leases.
Except as otherwise set forth herein, each Executory Contract and Unexpired Lease shall be deemed automatically assumed in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, unless such Executory Contract or Unexpired Lease:

(a)     has been previously rejected by the Debtor by Final Order of the Bankruptcy Court;

(b)     has been rejected by the Debtor by order of the Bankruptcy Court as of the Effective Date, which order becomes a Final Order after the Effective Date;

(c)     is the subject of a motion to reject filed by the Debtor under section 365 of the Bankruptcy Code pending as of the Effective Date;

(d)     is listed on the Schedule of rejected Executory Contracts and Unexpired Leases, attached hereto as Exhibit A; or

(e)     is otherwise rejected pursuant to the terms herein.

An Executory Contract or Unexpired Lease that is deemed to be assumed pursuant to the foregoing sentence shall be referred to as an "Assumed Contract." Except as otherwise provided in the following sentence, assumed contracts will be cured by being Reinstated and all cure payments under any assumed contract will be made by the Reorganized Debtor on the Effective Date or as soon as practicable thereafter. In the event of a dispute, cure payments required by section 365(b)(1) of the Bankruptcy Code shall be paid upon entry of a Final Order resolving such dispute; *provided, however*, if an objection to cure amount is sustained by the Bankruptcy Court, the Reorganized Debtor, in its sole discretion, may elect to reject such Executory Contract or Unexpired Lease in lieu of assuming it. Entry of the Confirmation Order by the Bankruptcy Court shall constitute findings by the Bankruptcy Court that (i) the Reorganized Debtor has properly provided for the cure of any defaults that might have existed consistent with the requirements of section 365(b)(1) of the Bankruptcy Code, (ii) each assumption is in the best interest of the Reorganized Debtor, its estate, and all parties in interest in the Chapter 11 Case, and (iii) the requirements for

assumption of any Executory Contract or Unexpired Lease to be assumed have been satisfied.

9.2     Rejection of Executory Contracts and Unexpired Leases.

Executory Contracts and Unexpired Leases set forth on Exhibit A attached hereto shall be deemed rejected as of the corresponding date set forth on Exhibit A hereto. The Debtor reserves the right, at any time prior to the Effective Date, except as otherwise specifically provided in this Plan, to remove any Executory Contract or Unexpired Lease from Exhibit A or to seek to reject any Executory Contract or Unexpired Lease to which the Debtor is a party and to file a motion requesting authorization for the rejection of any such Executory Contract or Unexpired Lease. Any personal property left by the Debtor on the premises related to Unexpired Leases rejected pursuant to this Plan or orders of the Bankruptcy Court shall be deemed abandoned pursuant to section 554 of the Bankruptcy Code. Non-Debtor counterparties to Unexpired Leases rejected pursuant to the Plan or orders of the Bankruptcy Court may dispose of any such personal property in their sole and absolute discretion without liability to the Debtor.

Each non-Debtor counterparty to an Executory Contract or Unexpired Lease rejected pursuant to this Plan shall have ten (10) days after service of Exhibit A hereto upon such counterparty to file a written objection to the rejection of its Executory Contract or Unexpired Lease and serve it in a manner to be actually received by each of the following persons (i) counsel to the Debtor: Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019, Attn: Jeffrey D. Saferstein, Esq. and Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, Delaware 19801, Attn: Pauline K.

Morgan, Esq., and (ii) the U.S. Trustee, J. Caleb Boggs Federal Building, Suite 2207, Lockbox 35, 844 N. King Street, Wilmington, DE 19801, Attn: David M. Klauder, Esq. The Debtor shall promptly ask the Bankruptcy Court to schedule a hearing to consider any such objections that cannot be consensually resolved by the Debtor and the objecting non-Debtor counterparty.

> 9.3 <u>Rejection Damages Bar Date for Rejections Pursuant to Plan</u>. If the rejection of an Executory Contract or Unexpired Lease pursuant to this Plan results in a Claim, then such Claim shall be forever barred and shall not be enforceable against the Debtor or Reorganized Debtor or their properties, or any of their interests in properties as agent, successor or assign, unless a Proof of Claim is filed with the claims agent and served upon counsel to the Reorganized Debtor within thirty (30) days after the later of (i) entry of the Confirmation Order, or (ii) the effective date of rejection of the Executory Contract or Unexpired Lease. The Debtor shall give notice of the bar date established by this section 9.3 to the non-Debtor counterparties to the Executory Contracts and Unexpired Leases on Exhibit A hereto by service of this Plan, the Confirmation Order or otherwise.

> 9.4 <u>Compensation and Benefit Programs</u>. All of the Debtor's programs, plans, agreements and arrangements relating to employee compensation and benefits, including, without limitation, all savings plans, retirement plans, healthcare plans, disability plans, severance plans, incentive plans, and life, accidental death and dismemberment insurance plans, entered into before the Petition Date and not since terminated, will be deemed to be, and will be treated as though they are, executory contracts that are assumed under Section 9.1 of this Plan, and the Debtor's and

Reorganized Debtor's obligations under such programs, plans, agreements and arrangements will survive confirmation of this Plan and will be fulfilled in the ordinary course of business.

## ARTICLE X
## RELEASES AND INJUNCTION

10.1    Discharge of the Debtor.  Except as otherwise provided herein, the rights afforded herein and the treatment of all Claims and Equity Interests herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims or Interests of any kind or nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor, the Debtor in Possession, the Reorganized Debtor or any of their respective assets or properties, arising prior to the Effective Date.  Except as otherwise expressly specified in the Plan, the Confirmation Order shall act as of the Effective Date as a discharge of all debts of, Claims against, Liens on, and Equity Interests in the Debtor, its respective assets and properties, arising at any time before the Effective Date, regardless of whether a proof of Claim or Equity Interest with respect thereto was filed, whether the Claim or Equity Interest is Allowed, or whether the Holder thereof votes to accept the Plan or is entitled to receive a Distribution hereunder.  Except as otherwise expressly specified in the Plan, after the Effective Date, any Holder of such discharged Claim or Equity Interest shall be precluded from asserting any other or further Claim against, or Interest in, the Debtor, the Reorganized Debtor, or any of their respective assets or properties, based on any document, instrument, act, omission, transaction, or other activity of any kind or nature that occurred before the Effective Date.

10.2    <u>Injunction</u>.  Except as otherwise expressly provided in the Plan, the Confirmation Order, the Plan Supplement Documents, or a separate order of the Court, all Persons who have held, hold, or may hold Claims against, or Equity Interests in, the Debtor that arose before or were held as of the Effective Date, are permanently enjoined, on and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind against the Debtor or the Reorganized Debtor with respect to any such Claim or Equity Interest, (b) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against the Debtor or the Reorganized Debtor on account of any such Claim or Equity Interest, (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtor or the Reorganized Debtor or against the property or interests in property of the Debtor or the Reorganized Debtor on account of any such Claim or Equity Interest, and (d) asserting any right of setoff or subrogation of any kind against any obligation due from the Debtor or the Reorganized Debtor or against the property or interests in property of the Debtor or the Reorganized Debtor on account of any such Claim or Equity Interest. Such injunction shall extend to successors of the Debtor (including, without limitation, the Reorganized Debtor) and its property and interests in property.

10.3    <u>Preservation of Causes of Action</u>.  The Reorganized Debtor shall retain all rights and all Causes of Action accruing to it and its estate, including but not limited to, those arising under sections 505, 544, 547, 548, 549, 550, 551, 553 and 1123(b)(3)(B) of the Bankruptcy Code, including all tax setoff and refund rights arising under section 505, other than as expressly provided below.  Except as expressly provided in this Plan or the Confirmation Order, nothing contained in this Plan or the Confirmation

Order shall be deemed to be a waiver or relinquishment of any such rights or Causes of Action. Nothing contained in this Plan or the Confirmation Order shall be deemed a waiver or relinquishment of any Claim, Cause of Action, right of setoff, or other legal or equitable defense that the Debtor has that is not specifically waived or relinquished by this Plan. The Reorganized Debtor shall have, retain, reserve and be entitled to assert all such Claims, Causes of Action, rights of setoff and other legal or equitable defenses that the Debtor has as fully as if the Chapter 11 Case had not been commenced, and all of the Reorganized Debtor's legal and equitable rights respecting any Claim that are not specifically waived or relinquished by this Plan may be asserted after the Effective Date to the same extent as if the Chapter 11 Case had not been commenced.

10.4    Administrative Claims Incurred After the Confirmation Date. Administrative Claims incurred by the Reorganized Debtor after the Confirmation Date, including (without limitation) Claims for Professionals' fees and expenses incurred after such date, may be paid by the Reorganized Debtor in the ordinary course of business and without the need for Court approval.

10.5    Mutual Releases. On the Effective Date, (a) the Debtor and the Reorganized Debtor, on behalf of themselves and their estates, (b) all of their respective current and former officers, directors, employees, partners, advisors, attorneys, financial advisors, accountants and other professionals, (c) the members of, and counsel and financial advisors to, the Creditors' Committee (if any), (d) the Holders of Equity Interests, (f) the Holders and their counsel and financial advisors of Bank Guaranty Secured Claims, in each case, in their respective capacities as such, (collectively clauses (a) through (f) being the "Released Parties," and each a "Released Party") shall be

deemed to and hereby unconditionally and irrevocably release each other from any and all claims, obligations, suits, judgments, damages, rights, Causes of Action and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon actions taken in their respective capacities described above or any omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor, the Chapter 11 Case, or the Plan, except that (i) no individual shall be released from any act or omission that constitutes gross negligence or willful misconduct, (ii) the Released Parties shall not relinquish or waive the right to assert any of the foregoing as a legal or equitable defense or right of set-off or recoupment against any claims or Cause of Action of any other Released Party, (iii) the foregoing release shall not apply to any contractual, financial or legal obligations owed to the Debtor or Reorganized Debtor or any obligation arising under the Plan or an agreement entered into pursuant to, in connection with or contemplated by, the Plan, and (iv) for the avoidance of doubt, the foregoing release shall not apply to any contractual, financial or legal rights or obligations arising from, or in any way related to, the Global Restructuring.

      10.6    <u>Exculpation</u>.

      (a)    <u>Exculpation and Limitation of Liability</u>.  The Debtor, the Reorganized Debtor and the other Released Parties (i) shall have no liability whatsoever to any Holder or purported Holder of an Administrative Expense Claim, Claim, or Equity Interest for any act or omission in connection with, or arising out of, the Plan, the Disclosure Statement, the negotiation of the Plan, the negotiation of the Plan Supplement Documents, the pursuit of approval of the Disclosure Statement, the Chapter 11 Case, the

consummation of the Plan, the administration of the Plan or the property to be distributed under the Plan, or any transaction contemplated by the Plan or Disclosure Statement or in furtherance thereof except for any act or omission that constitutes willful misconduct or gross negligence as determined by a Final Order, and (ii) in all respects, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations and any other applicable law or rules protecting such Released Parties from liability.

(b)     Limitation of Governmental Releases. Notwithstanding Sections 10.5 and 10.6 of the Plan, the Plan shall not release, discharge, or exculpate any non-Debtor party from any debt owed to the United States Government and/or its agencies, including the Pension Benefit Guaranty Corporation (the "Government"), or from any liability arising under the Internal Revenue Code, the Employee Retirement Income Security Act of 1974, as amended, or the environmental laws, securities laws or criminal laws of the United States. In addition, notwithstanding Sections 10.5 and 10.6 of the Plan, the Plan shall not enjoin or prevent the Government from collecting any such liability from any such non-Debtor party.

10.7   Term of Bankruptcy Injunction or Stays.  All injunctions or stays provided for in the Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

10.8   Preservation of Insurance.

(a)   Limitations on Amounts to be Distributed to Holders of Allowed Insured Claims.  Distributions under the Plan to each Holder of an Allowed Claim that is an Insured Claim shall be in accordance with the treatment provided under the Plan for the Class in which such Allowed Claim is classified, but solely to the extent that such Allowed Claim is not satisfied from proceeds payable to the Holder thereof under any pertinent insurance policies and applicable law.  Nothing in this Section 10.8(a) shall constitute a waiver of any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities that any Person may hold against any other Person, including the Debtor's insurance carriers.

(b)   Reinstatement and Continuation of Insurance Policies.  Unless otherwise rejected during the pendency of the Chapter 11 Case, from and after the Effective Date, each of the Debtor's insurance policies in existence on and as of the Confirmation Date shall be Reinstated and continued in accordance with its terms and, to the extent applicable, shall be deemed assumed by the Reorganized Debtor pursuant to section 365 of the Bankruptcy Code.

        The Debtor's discharge and release from all Claims and Equity Interests, as provided herein, shall not diminish or impair the enforceability of any insurance policy that may cover Claims against the Debtor, the Reorganized Debtor (including, without

limitation, its officers and directors) or any other person or entity. Notwithstanding any other provision of the Plan or the Confirmation Order, nothing in this Plan shall (i) impair (w) the right of any insurer to defend against any claim asserted against such insurer, (x) an insurer's status as a secured creditor to the extent applicable under the terms of the Plan, including the right to recover from any Collateral (in accordance with the applicable insurance policy), (y) an insurer's right to draw on third-party letters of credit (in accordance with the terms of the applicable insurance policy and letter of credit), or (z) any insurer's right of setoff pursuant to section 553 of the Bankruptcy Code to the extent applicable, and/or (ii) affect an insurer's right to seek arbitration of disputes between the Debtor and such insurer to the extent provided for under the terms of the applicable insurance agreement.

10.9 <u>Officers' and Directors' Indemnification Rights and Insurance</u>. Notwithstanding any other provisions of the Plan, the obligations of the Debtor to indemnify its current and former directors, officers, and employees against any obligations, liabilities, costs or expenses pursuant to the articles of organization or by-laws, of the Debtor, applicable state law, specific agreement, or any combination of the foregoing, shall survive the Effective Date.

10.10 <u>Debtor's Release</u>. As of the Effective Date, each Holder of a Claim, each of whom has, or is presumed to have, accepted the Plan, including all Holders of Administrative Expense Claims, by its acceptance of the Plan or its receipt or retention of distributions or consideration hereunder, is deemed to have released the Debtor from any right, Claim or Cause of Action whatsoever (other than the right to enforce the Debtor's obligations under the Plan or as otherwise provided in the Plan),

whether known or unknown, foreseen or unforeseen, arising from or related to the Chapter 11 Case, the Debtor, the operations of the Debtor, the Plan or any act of compliance herewith (including, without limitation, the transfer of any assets hereunder), in each case that arose before the Effective Date, in each case regardless of whether a proof of Claim is filed or deemed filed, or whether or not Allowed; provided that nothing herein shall release the Debtor from any contractual, financial or legal obligations arising from, or in any way related to, the Global Restructuring. All Persons by whom rights or property have been received or retained under the Plan shall be enjoined from commencing or continuing any action or proceeding against or affecting the Debtor's assets or properties, including by the assertion of any set-off or recoupment, other than an action or proceeding to enforce any right or obligation under the Plan.

## ARTICLE XI
## CONDITIONS PRECEDENT TO CONFIRMATION
## AND EFFECTIVENESS OF THE PLAN

11.1    <u>Conditions Precedent to the Effective Date</u>.  Consummation of the Plan and the occurrence of the Effective Date are subject to satisfaction of the following conditions:

(a)    the Confirmation Order shall have become a Final Order; and

(b)    the Distribution Reserve shall have been established.

11.2    <u>Waiver of Condition</u>.  The Debtor may waive the condition set forth in Section 11.1 hereof.

# ARTICLE XII
# RETENTION OF JURISDICTION

12.1     Retention of Jurisdiction.  The Chapter 11 Case shall remain subject to the jurisdiction of the Bankruptcy Court until the Effective Date.  From and after the Effective Date, and until the Chapter 11 Case is closed pursuant to section 350(a) of the Bankruptcy Code and Bankruptcy Rule 3022, the Bankruptcy Court shall retain and have exclusive jurisdiction of all matters arising out of, and related to, the Chapter 11 Case and the Plan for, among other things, the following purposes:

(a)     to determine any and all pending adversary proceedings, applications, and contested matters;

(b)     to hear and determine all matters arising out of and/or related to the Chapter 11 Case and/or the Plan;

(c)     except as otherwise provided in the Plan, to hear and determine any objections to Claims for Administrative Expenses or to proofs of Claims filed either before or after the Effective Date, including any objections to the classification of any Claim, and to liquidate and fix contingent or unliquidated Claims, and to allow or disallow any Disputed Claim (including any Disputed Administrative Expense), in whole or in part;

(d)     to ensure that distributions to Holders of Allowed Claims are accomplished as provided herein;

(e)     to enter and implement such orders as may be appropriate if the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(f)     to issue such orders in aid of execution of the Plan and all

agreements or documents created in connection with the Plan to the extent authorized by

sections 105(a) and 1142 of the Bankruptcy Code;

(g)     to consider any modifications of the Plan, to cure any defect or

omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including

the Confirmation Order;

(h)     to compel performance under the Plan and documents executed in

connection with the Plan;

(i)     to enforce remedies upon any default under the Plan;

(j)     to hear and determine all applications for compensation and

reimbursement of expenses of Professionals under sections 330 and 503(b) of the

Bankruptcy Code;

(k)     to hear and determine disputes arising in connection with the

interpretation, implementation, or enforcement of the Plan, the Confirmation Order, and

any other documents executed and delivered in connection with the Plan;

(l)     to recover all assets of the Debtor and property of its estate,

wherever located, including the prosecution and adjudication of all Causes of Action

available to the Debtor as of the Confirmation Date;

(m)     to hear and determine matters concerning state, local, and federal

taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

(n)     to enforce all orders, judgments and rulings entered in connection

with the Chapter 11 Case;

(o)     to hear any other matter not inconsistent with the Bankruptcy

Code; and

(p)     to enter a final decree closing the Chapter 11 Case once all of the

transactions contemplated by the Plan have been completed.

## ARTICLE XIII
## MISCELLANEOUS PROVISIONS

13.1     Payment of Statutory Fees.  All fees payable pursuant to section

1930 of Title 28 of the United States Code, as determined by the Bankruptcy Court at the

hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid on or before the

Effective Date.

13.2     Bar Date for Professional Fee and Expense Claims.  Unless

another time is set by Final Order of the Bankruptcy Court, all applications of

professional Persons under sections 330 or 503(b) of the Bankruptcy Code for allowance

of compensation and reimbursement of expenses shall be filed within sixty (60) days

after the Confirmation Date.

13.3     Modification of the Plan.  The Debtor reserves the right to amend

or modify the Plan under section 1127 of the Bankruptcy Code at any time before the

Confirmation Date.  After the Confirmation Date and before substantial consummation of

the Plan, the Debtor or any party in interest may, so long as it does not adversely affect

the treatment of Creditors under the Plan, institute proceedings in the Bankruptcy Court

to amend or modify the Plan or to remedy any defect or omission or reconcile any

inconsistency in the Plan or Confirmation Order, and such other matters as may be

necessary to carry out the purposes and effects of the Plan, *provided, however,* that prior

notice of any such proceeding is given in accordance with Bankruptcy Rules 2002 and 9014.

13.4 _Revocation of Plan_. The Debtor reserves the right, at any time prior to the entry of the Confirmation Order, to revoke and withdraw the Plan. If the Debtor revokes or withdraws the Plan, it shall be null and void and, in such event, nothing contained herein shall be deemed to constitute a waiver or release of any Causes of Action or Claims by or against the Debtor or any other entity or to prejudice in any manner the rights of the Debtor or any entity in any further proceedings involving the Debtor.

13.5 _Headings_. Headings are used in the Plan for convenience and reference only, and shall not constitute a part of the Plan for any other purpose.

13.6 _Binding Effect_. The Plan shall be binding upon and inure to the benefit of the Debtor, the Claim Holders and their respective successors and assigns.

13.7 _Notices_. Any notice required or permitted to be provided under the Plan shall be in writing and served by either (i) certified mail, return receipt requested, postage prepaid, (ii) hand delivery, (iii) reputable overnight delivery service, freight prepaid, or (iv) facsimile, to be addressed as follows:

If to the Debtor or to the Reorganized Debtor, or to any one of them:

> Paul, Weiss, Rifkind, Wharton & Garrison LLP
> 1285 Avenue of the Americas
> New York, New York 10019-6064
> Facsimile No. (212) 757-3990
> Attention: Jeffrey D. Saferstein

13.8 _Governing Law_. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the internal laws of

the state of incorporation of the Debtor shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan.

13.9 Filing of Additional Documents. On or before substantial consummation of the Plan, the Debtor shall file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

13.10 Further Proceedings. The Debtor shall defend, at its own cost and expense, any appeal of the Confirmation Order.

13.11 Withholding and Reporting Requirements. In connection with the Plan and all documents issued in connection therewith and distributions thereon, the Debtor shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements.

Dated: September 2, 2009

Respectfully submitted,

SAMSONITE COMPANY STORES, LLC

By: _____
Name: Donald E. Walden
Title: Assistant Treasurer

# EXHIBIT B

## Financial Projections and Valuation Discussion

[The Debtor's Financial Projections and Valuation Discussion will be filed with the Court at a later date.]